OPINION OF THE COURT
Meyer, J.
In a strict products liability action based upon design defect, whether the product as marketed was reasonably safe for its intended use is determined by whether a reasonable person with knowledge of the potential for injury of the product and of the available alternatives, balancing the product’s risks against its utility and costs and against *267 the risks, utility and cost of the alternatives, would have concluded that it should not have been marketed in the condition that it \yas. The critical time being the date of marketing, postmanufacture changes in design are admissible to demonstrate feasibility of alternatives, but feasibility having been conceded in the present case, it was error to permit introduction of evidence concerning a Federal motor vehicle safety standard applicable only to cars marketed in years subsequent to that in which the car involved in the instant case was delivered. For this reason and on the bases of other errors hereafter detailed, the order of the Appellate Division should be reversed, with costs, and a new trial granted.
I
On June 8, 1974, Irving Cohen was operating his 1973 Chevrolet Malibu. It had been purchased by him from defendant Kinney Motors in October, 1972, and had been driven approximately 12,000 miles during the 18 months between the time it was delivered to him new on December 22, 1972 and the accident. During that period no difficulty had been experienced with the acceleration system of the car. Seeking to parallel park on the west side of East 49th Street in Brooklyn, Cohen brought the car to a stop on that side and put it in reverse, when, according to him, the car shot backward at high speed and could not be stopped although he had his foot on the brake. It proceeded backward in an arc some 70 feet to the east side of the street, through an open space on that side where it jumped the curb, stopping only when it hit the wall of a building. Plaintiff, Astor Cover, who was walking along the east sidewalk at that point, was crushed against the wall by the car, as a result of which one leg was amputated above the knee and the other required a brace. With a prosthesis and the brace he now can stand only with the help of canes with forearm extensions.
An action was promptly begun on behalf of Cover and his wife against Cohen based on negligence in the operation of the car and in that connection Cohen’s examination before trial was taken. In August, 1976, after the death of Cohen and a substitution of counsel for plaintiffs, the complaint was amended to add as defendants Kinney Motors, the *268 dealer, and General Motors, the manufacturer of the automobile involved in the accident, and Cohen’s administratrix was substituted as a defendant.
A bifurcated trial resulted in the jury answering affirmatively interrogatories asking (1) whether Irving Cohen was negligent in the operation of the Chevrolet and whether that was a proximate cause of the accident, (2) whether General Motors was negligent and whether its negligence was a proximate cause of the accident, (3) whether the throttle return spring of the Chevrolet was defective and whether the defect existed at the time it left the possession of General Motors and Kinney, and (4) whether the Chevrolet was unreasonably dangerous as a result of the defect in the spring and the defect a proximate cause of the accident. Following the space for answering the fourth interrogatory was the direction “If your answer is ‘yes’ then you must also find as against Kinney Motors as the seller (of the vehicle) on this issue of strict liability”. Degrees of fault were assessed by the jury as Irving Cohen 2%, General Motors 94% and Kinney Motors 4%, and damages were assessed in favor of Astor Cover at $6,000,000 and in favor of Pearl Cover, on her derivative cause of action, at $2,000,000.
The Trial Judge submitted the case to the jury as to Cohen on the basis of negligence, as to Kinney solely on the basis of strict liability and as to General Motors on the basis of both negligence and strict liability. Following the jury’s responses noted above, he granted Kinney’s motion for judgment on its cross complaint against General Motors “for indemnification as a matter of law” and granted General Motors’ motion to reduce the verdicts to the amounts demanded in the complaint ($3,000,000 and $1,000,000, respectively), but otherwise denied General Motors’ motion for judgment notwithstanding the verdict and for a new trial.
General Motors appealed to the Appellate Division from the judgment in favor of the Covers but not from the judgment over in Kinney’s favor, and Kinney filed a notice of appeal, which it designated as “protective,” from the judgment against it in plaintiffs’ favor. In a memorandum which discussed only the excessiveness of the verdicts, but *269 stated that defendants’ other contentions were without merit, the Appellate Division reversed unless plaintiffs stipulated to the further reduction of the verdict and judgment to $2,000,000 for Astor Cover and $300,000 for Pearl Cover. Plaintiffs so stipulated. General Motors now appeals to this court, pursuant to our leave (59 NY2d 605). Kinney did not seek leave, but has filed a brief arguing that, because the judgment against it derives wholly from the liability found against General Motors, if the judgment against General Motors is reversed, plaintiffs’ judgment against Kinney must also be reversed.
The appeal raises questions concerning the propriety of the introduction in evidence of (1) a Federal motor vehicle safety standard which postdated the manufacture of the car involved in the accident, (2) the throttle spring removed from the Cohen vehicle some 15 months after the accident, (3) a statement made by Irving Cohen to a police officer shortly after the accident and recorded in his report on the accident, and (4) a technical service bulletin with respect to the carburetor spring of the 1973 Chevrolet sent to its dealers by General Motors under date of January 22, 1974.[1] Also presented is the question whether if there is a reversal as to General Motors, there can also be a reversal as to Kinney, a nonappealing party. We conclude that it was error to have permitted the standard, the spring and the Cohen statement to reach the jury but that the bulletin, if properly related to the defect upon which plaintiffs based their claim,[2] was admissible on the cause of action *270 for negligent failure to warn. We conclude also that there should be a reversal and a new trial as to both General Motors and Kinney.
II
The combined effect of our decisions in Caprara v Chrysler Corp. (52 NY2d 114) and Rainbow v Elia Bldg. Co. (56 NY2d 550) is to permit the introduction in a strict products liability case based upon a manufacturing defect of evidence of a manufacturer’s subsequent modifications to establish defectiveness of the product when made, but to proscribe the use of such evidence to establish fault in a strict products liability case based upon a defect in design or the failure to warn or adequately instruct concerning the use of the product. Such evidence may be admissible in cases of the latter type to establish feasibility but, in view of the abstruse, subjective judgment involved in the balancing of risks and benefits necessary to determine whether the product as made and sold was reasonably safe (see Voss v Black & Decker Mfg. Co., 59 NY2d 102, 109), and the substantial risk that such evidence may be overemphasized by the jury, will not be admitted even for that purpose if the manufacturer concedes feasibility (see Bolm v Triumph Corp., 71 AD2d 429, 437, mot for lv to app dsmd 50 NY2d 928).
Plaintiffs recognize that such is the present rule but urge upon us the value of a single standard for all such cases and argue that in any event the determinative time should be the date of the accident rather than the date, of manufacture. We decline the single standard invitation because of the different inquiries involved in the different types of cases, as expounded in Caprara and Rainbow (see, also, Opera v Hyva, Inc., 86 AD2d 373 [Simons, J.]). With respect to determinative date, we do not blink the facts that some of the opinions speak of “postaccident” modifications (e.g., Caprara, 52 NY2d, at p 122; Rainbow, 79 AD2d, at pp 292, 293, 294) and that there is little if any deterrent effect upon the manufacturer’s improvement of his product in allowing introduction of evidence concerning postmanufacture preaccident modifications. We conclude, nevertheless, that except for the limited exceptions for feasibility, already noted, and for cases, discussed below, involving a *271 claimed violation of the manufacturer’s continuing duty to warn, data not available at the time of manufacture is not admissible in such a case.
The references in Caprara and Rainbow to “postaccident” modifications are not deemed significant; the adjective was simply descriptive of the modifications under discussion in those cases. Other language in those and other cases establishes the date of manufacture as the critical time (Caprara, 52 NY2d, at p 124 [“defective when it leaves their possession”]; Rainbow, 79 AD2d, at p 293 [“technology of the industry at the time of manufacture”], and at p 295 [“testing unavailable when the product was made”]; see Voss v Black & Decker Mfg. Co., 59 NY2d, at p 107 [“before making the product available to the public”]). Nor is the lesser deterrence from improvement of significance for, as Caprara itself makes clear, its rule is bottomed essentially upon the potential for prejudice which the admission of evidence of later modifications entails (52 NY2d, at p 122).
Admissibility in the present case of evidence concerning Federal motor vehicle safety standard 124 is complicated by the facts that though it was first proposed by the Government in 1969, it is, as finally adopted, applicable only to 1974 and later model vehicles; that although the standard itself never came into evidence, the original draft proposal as printed in the Federal Register together with General Motors’ comments on it as it was being developed were admitted together with testimony of the then Director of the National Highway Traffic Safety Bureau, at whose instance the proposed standard was prepared, that the standard had in fact been promulgated prior to the accident and required an accelerator spring different from that on the Cohen vehicle; and that that testimony and those documents came in as part of plaintiffs’ case on rebuttal.
Beyond peradventure, therefore, the jury became aware, notwithstanding that the standard in the form finally adopted was not received in evidence, that a standard had ultimately been adopted by the Federal Government, that it was adopted prior to the accident and that it required an accelerator spring different from that on the 1973 Chevro *272 let. Its admission was both improper, under the Caprara/ Rainbow rules outlined above, and clearly prejudicial (Trimarco v Klein, 56 NY2d 98,108), and constitutes reversible error unless its admission can be justified, notwithstanding the prejudice, on some other ground.
Plaintiffs suggest that General Motors’ involvement “in the rule making procedures is probative of the fact that it did not need a federal standard to inform it that its spring needed replacement.” There are a number of answers. First, the issue before the jury was whether the 1973 Malibu with the production spring it came equipped with was reasonably safe (Voss v Black & Decker Mfg. Co., 59 NY2d, at p 108), not whether it used the safest possible accelerator spring (Levine v Blaine Co., 273 NY 386, 389; Garthe v Ruppert, 264 NY 290, 296). That the agency proposed a change established only that a better way was thought possible, not that balancing risks and benefits of both the existing way was not reasonably safe. Second, the proposal related to cars of many manufacturers, not just to Chevrolets or even all General Motors cars, and resulted in no requirement for recall or replacement of the springs on any pre-1974 model year car of any manufacturer. Thus, the agency’s ultimate conclusion was that a better way was possible, not that the springs previously in use by General Motors and other manufacturers were not reasonably safe at the time they were used in the manufacture of cars. Third, nothing in General Motors’ comments on the proposed rulemaking suggests knowledge on its part that its 1973 model production spring was not reasonably safe. To the contrary, General Motors detailed for the agency the design of its accelerator control system, stated “We believe that this design is in the interest of motor vehicle safety” and commented that a “ ‘redundant and failsafe’ * * * accelerator control system * * * could, in our judgment, tend to repress rather than advance vehicle safety.”
The issue before the jury was whether upon delivery to Irving Cohen in December, 1972 of his 1973 Malibu with the spring then in use by General Motors the car was reasonably safe in design. On that issue admission of evidence concerning the standard promulgated by the National Highway Traffic Safety Bureau in January, 1973 *273 was reversible error. The prejudice resulting was, moreover, compounded by the facts that the testimony of the bureau director and the documents introduced through him came in on rebuttal, by the introduction of the spring from the Cohen car, and by the admission of Irving Cohen’s statement to the police officer.
The spring, removed from the Cohen vehicle some 15 months after the accident, was admitted over objection that no proper foundation had been laid and that although it was elongated no explanation of the elongation was offered. Plaintiffs’ argument that it was necessary to introduce that particular spring despite the elongation in order to show the jury what a production accelerator spring looked like is belied by the testimony of the adjuster who removed the spring from the Cohen car that he replaced it with a spring purchased at Jamaica Chevrolet. The court’s statement to the jury at the time of admission that the spring was admitted “for the limited purpose of indicating to the jury how it was * * * on the date * * * removed * * * and for that purpose only” and its instruction in the final charge that it is “merely here for the purpose of the witness being able to testify as to the spring he removed from the car” emphasize the error for, absent foundation testimony, both the spring removed from the car 15 months after the accident and “how it was” on the date removed were irrelevant and inadmissible. And while the final charge included the further statement that the spring was not admitted “for the purpose of establishing the condition of the spring or which spring was on the car at the time the car was manufactured or at the time of the accident,” that too compounded the error for it left the jury wholly at a loss as to the significance of the adjuster’s testimony that it was the spring he removed from the car, and was followed by the statement that “You have a right to consider all questions and all answers made with regard to that spring if you find it to be relevant in this case.” Bearing in mind the bureau director’s testimony concerning the weakness of the production spring to perform its function and the confusing instructions with respect to the purpose for which the elongated spring was admitted, we conclude that its admission must be deemed prejudicial.
*274 Prejudice resulted also from the erroneous admission of Officer Hlinko’s testimony and his accident report of Irving Cohen’s statement that “his accelerator stuck on him.” That evidence was admitted on the basis that defendant had a duty to report to the officer and that his statement was a declaration against interest. But the statement was exculpatory rather than inculpatory and, therefore, cannot qualify as a declaration against interest (Mahon v Giordano, 30 AD2d 792; see Secor v Kohl, 67 AD2d 358, 363) and it, therefore, cannot be said that there was no motive to falsify (see Richardson, Evidence [Prince, 10th ed], § 262). Nor was the report admissible as a business record for Cohen was under no duty to report to the officer and the declaration does not meet the test of any other hearsay exception (Matter of Leon “RR”, 48 NY2d 117,122; Johnson v Lutz, 253 NY 124; Secor v Kohl, supra; Toll v State of New York, 32 AD2d 47, 49; Mahon v Giordano, supra; see Ann., 77 ALR3d 115; Richardson, op. cit., § 299). Plaintiffs’ suggestion that it may qualify under the exception for a spontaneous declaration (excited utterance) was not advanced below and the record does not sufficiently establish the time interval between the event and the statement, Mr. Cohen’s condition at the time or whether the statement was in response to an inquiry, all of which are relevant to admissibility on that ground (People v Sostre, 51 NY2d 958; People v Edwards, 47 NY2d 493; People v Caviness, 38 NY2d 227; see Fisch, NY Evidence [2d ed], § 1000).
Ill
For the same reasons that govern the Federal standard, the technical service bulletin issued by General Motors some 13 months after delivery of the Cohen Chevrolet was not admissible on the design defect cause of action or the failure to warn cause of action insofar as it turned on the design and risk status of the vehicle at the time of delivery. A manufacturer or retailer may, however, incur liability for failing to warn concerning dangers in the use of a product which come to his attention after manufacture or sale, through advancements in the state of the art, with which he is expected to stay abreast, or through being made aware of later accidents involving dangers in the *275 product of which warning should be given to users (see Schumacher v Richards Shear Co., 59 NY2d 239, 247; 1 NY PJI2d 364-365; 1A Frumer & Friedman, Products Liability, § 8.02). Because liability on the theory of negligent failure to warn was presented during trial of the instant action and can be expected to arise again during retrial and because it is a necessary predicate for determining admissibility of the technical service bulletin, we outline the governing law.[3]
Although a product be reasonably safe when manufactured and sold and involve no then known risks of which warning need be given, risks thereafter revealed by user operation and brought to the attention of the manufacturer or vendor may impose upon one or both a duty to warn (Rekab, Inc. v Hrubetz & Co., 261 Md 141; doCanto v Ametek, Inc., 367 Mass 776; Comstock v General Motors Corp., 358 Mich 163; Bottazzi v Petroleum Helicopters, 664 F2d 49; Rozier v Ford Motor Co., 573 F2d 1332, reh en banc den 578 F2d 871; Schenebeck v Sterling Drug, 423 F2d 919; Braniff Airways v Curtiss-Wright Corp., 411 F2d 451; see Jackson v New Jersey Mfrs. Ins. Co., 166 NJ Super 448, cert den 81 NJ 330; Prosser, Torts [4th ed], p 647; Restatement, Torts 2d, § 388). Not entirely clear from the cases, however, is what constitutes sufficient notice to the manufacturer or vendor to require its issuance of a warning, whether the manufacturer satisfies its obligation by notifying the vendor or must notify the user as well, or what the obligation of the vendor who receives such notice is to the user.
What notice to a manufacturer or vendor of problems revealed by use of the product will trigger his postdelivery duty to warn appears to be a function of the degree of danger which the problem involves and the number of instances reported (Comstock, 358 Mich, at p 176 [thousands of defective power brakes]; Bottazzi, 664 F2d, at p 52 [several instances of corrosion of propeller shaft of a helicopter]; Braniff Airways, 411 F2d, at p 453, cert den 396 US 959 [instances of cylinder barrel separation in an *276 aircraft engine]; Restatement, Torts 2d, § 388, Comment i [“part of a lot, some of which he has discovered to be so imperfect as to be dangerous”]). When a prima facie case on that issue has been made will, of course, depend upon the facts of each case. Where, as here, however, the manufacturer has issued and sent to the vendor a technical service bulletin acknowledging that “[s]ome 1973 passenger cars * * * may exhibit an erratic idle speed and slow return to idle”, that acknowledgment, if otherwise relevant (see n 2 above), together with testimony that erratic idle speed or slow return to idle or both may seriously impair control of the vehicle presents a question of fact (General Motors Corp. v Dodson, 47 Tenn App 438; see Rozier v Ford Motor Co., 573 F2d 1332, supra; Bowman v General Motors Corp., 64 FRD 62).
The nature of the warning to be given and to whom it should be given likewise turn upon a number of factors, including the harm that may result from use of the product without notice, the reliability and any possible adverse interest of the person, if other than the user, to whom notice is given, the burden on the manufacturer or vendor involved in locating the persons to whom notice is required to be given, the attention which it can be expected a notice in the form given will receive from the recipient, the kind of product involved and the number manufactured or sold, and the steps taken, other than the giving of notice, to correct the problem (McLaughlin v Mine Safety Appliances Co., 11 NY2d 62; Rosebrock v General Elec. Co., 236 NY 227; Petzold v Roux Labs., 256 App Div 1096; Rehab, Inc. v Hrubetz & Co., 261 Md 141, supra; Comstock v General Motors Corp., 358 Mich 163, supra; Kozlowski v Smith’s Sons Co., 87 Wis 2d 882; LaBelle v McCauley Ind. Corp., 649 F2d 46; Jones v Bender Welding & Mach. Works, 581 F2d 1331; Pan-Alaska Fisheries v Marine Constr. & Design Co., 565 F2d 1129; Noto v Pico Peak Corp., 469 F2d 358; see Restatement, Torts 2d, § 388, Comment n; Prosser, loc. cit.). Germane also will be any governmental regulation dealing with notice (Clement v Rousselle Corp., 372 So 2d 1156, cert den 383 So 2d 1191 [Fla]). Generally, the issue will be one of fact for the jury (Rekab, Inc., 261 Md, at p 150) whose function will be to assess the reasonableness of *277 the steps taken by the manufacturer or vendor in light of the evidence concerning the factors listed above presented in the particular case, as well as any expert testimony adduced on the question. The manufacturer and the vendor do not necessarily have the same obligation to warn concerning dangers learned of after delivery of the product, as the Trial Judge recognized by dismissing for insufficiency of evidence the cause of action against Kinney for negligent failure to warn. On trial of the case, therefore, the technical service bulletin will be admissible, subject only to the Trial Judge’s ruling on its relevancy, but the instructions to the jury on the duty to warn should outline the factors for them to consider under the evidence presented.
IV
Despite the above grounds for reversal as to General Motors, plaintiffs argue that our recent decision in Hecht v City of New York (60 NY2d 57) forecloses reversal as to Kinney, which did not appeal to this court. We disagree.
All causes of action against Kinney except that predicated on strict liability were dismissed by the Trial Judge. The case went to the jury under instructions that if they found the Cohen vehicle defective and the defect a proximate cause of the accident their verdict should be for plaintiffs even though General Motors or Kinney had no knowledge of the defect, and with interrogatories which contained the direction that if they answered affirmatively the question as to defect and proximate cause “then you» must also find as against Kinney Motors as the seller (of the vehicle) on this issue of strict liability”. Pertinent also is the provision of the judgment granted Kinney on its cross complaint against General Motors that it was “for indemnification as a matter of law.”
As we noted in Hecht v City of New York (60 NY2d 57, 62, supra), “It is, of course, axiomatic that, once an appeal is properly before it, a court may fashion complete relief to the appealing party. On rare occasions, the grant of full relief to the appealing party may necessarily entail granting relief to a nonappealing party”. This is such an occasion, for here, if the judgment against Kinney stands, *278 General Motors will be required by the indemnity judgment against it to pay plaintiffs on the basis of a defective product manufactured by General Motors notwithstanding that on retrial the product may be found not to have been defective.
For the foregoing reasons, the order of the Appellate Division should be reversed, with costs, and a new trial granted as to both General Motors and Kinney.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Kaye concur; Judge Simons taking no part.
Order reversed, with costs to defendant General Motors against plaintiffs, and a new trial granted as to defendants General Motors and Kinney.

. Three other rulings are argued by General Motors: that design defect proof was beyond the scope of the bill of particulars, that evidence concerning Irving Cohen’s visit to his doctor on the morning of the accident was improperly excluded, and that certain cross-examination of a police sergeant should not have been allowed. They are either not preserved or do not merit discussion other than to note, as to the bill of particulars point, that paragraph 21 of the bill stated that the vehicle “was defective *** in * * * the design ***of the pull back spring of the carburetor” and paragraph 22(b) specified that the “spring * * * did not release entirely when the accelerator was released” (cf. Caprara v Chrysler Corp., 52 NY2d 114, 119, n 2).

. [4] The bulletin was admitted subject to connection, over objection as to relevance, but there does not appear to have been any specific later ruling that the required connection had been made. Relevance of such a bulletin is, of course, in the first instance for the Trial Judge (Prashker v Beech Aircraft Corp., 258 F2d 602, 608, cert den 358 US 910; see Harmon v Ford Motor Co., 89 AD2d 800, 801; Bertocci v Fiat Motors, 76 AD2d 779, 780; Johantgen v Hobart Mfg. Co., 64 AD2d 858, 859; see Uitts v General Motors Corp., 58 FRD 450, 62 FRD 560; Ann., 20 ALR3d 1430). Because the question will arise again on retrial, we note that in view of the highly prejudicial content of the bulletin the better practice would bé for relevance to be established prior to admission, out of the presence of the jury.

. Not considered because not urged during the prior trial is strict liability as it relates to a continuing duty to warn (see Opera v Hyva, Inc., 86 AD2d 373; Rainbow v Elia Bldg. Co., 49 AD2d 250, 253; Ann., 53 ALR3d 239).