*582 OPINION OF THE COURT
Simons, J.
Plaintiff, Joan Sage, an employee of third-party defendant Commuter Airlines, Inc., was injured while working in an aircraft owned by Commuter and manufactured by defendant Fairchild-Swearingen Corporation. The accident happened after plaintiff finished unloading baggage from the aircraft and attempted to lower herself from the cargo compartment. While doing so, she caught her finger on a hanger or hook attached to the doorway of the cargo compartment injuring the finger so severely that it had to be amputated. She subsequently instituted this action against defendant seeking to recover damages for her injuries on the theories of negligence and strict products liability based on a design defect. Defendant impleaded plaintiff’s employer, charging it with negligence and failing to provide plaintiff with a safe place to work. The action was tried before a jury and resulted in a verdict for plaintiff on the products liability claim. The jury found that the hanger was a replacement part made and installed by Commuter’s employees but that it was substantially the same design and had substantially the same characteristics as the hanger originally installed by defendant. Finding the hanger defectively designed and that the design caused plaintiff’s injuries without any fault on her part, the jury awarded plaintiff $185,000 in damages and apportioned fault 75% to defendant and 25% to the third-party defendant.
*583 The Appellate Division, relying on our decision in Robinson v Reed-Prentice Div. (49 NY2d 471), reversed and dismissed the complaint because the hanger on which plaintiff caught her finger had not been manufactured by defendant. It also stated that were it not dismissing the complaint as a matter of law, it would find the verdict for plaintiff against the weight of evidence.
 There should be a reversal and reinstatement of the complaint. However, because of the Appellate Division’s factual determination that the verdict was against the weight of the evidence, the matter should be remitted for a new trial.
The accident happened at Tompkins County Airport in Ithaca, New York, at about 9:00 p.m. on October 21, 1980. A Metro II 19-seat Commuter aircraft had just landed and plaintiff, pursuing her duties as a station agent, entered the aft hatch and began to unload passenger baggage by placing it on a baggage cart on the ground below. When she completed her work, plaintiff sat on the sill of the doorway, grasped the aft side of the doorframe with her left hand, and jumped. As she did so, the third finger of her left hand caught on a ladder hanger placed on the doorframe. She was suspended in air, hanging by her finger, until she freed herself with her other hand.
The door to the cargo compartment was located to the rear of the passenger section and was about five-feet wide. A freestanding ladder, six-feet long, used for entering and exiting the compartment, was supplied with the aircraft but was not available on the night of the accident. The aircraft was designed so that during flight the ladder was stowed by hanging it across the doorway and parallel to the ground suspended on two hangers, one on either side of the compartment doorway. The hangers were "u” or "v” shaped, with a 1.3-inch opening at the top and were affixed to the frame of the door by rivets. As originally constructed, a 1/16-inch plastic grommet was glued to the inside of the hanger to prevent the metal of the ladder from scraping against metal of the hanger.
Sometime before trial, the aft ladder hanger had been replaced by another made by Commuter’s employees.* They did this by flattening the original part with a roller and then *584 cutting a new part to duplicate the original design. The replacement was attached to the doorway of the cargo compartment in the same location and in the same manner as the original. Employees of defendant testified that they assumed the ladder would not be used at all times and that the hangers would break and be replaced. More importantly, defendant’s representatives acknowledged that once a hanger broke it was not expected that the purchaser would buy a new part from defendant because a replacement could easily be fabricated by the purchaser. Defendant’s witnesses also acknowledged that although there was no grommet on the aft hanger at the time of the accident, that would have no effect under the circumstances.
Plaintiff’s expert testified that the hanger presented a "very serious hazard to any personnel who are coming anywhere near it” because it protrudes into the space where personnel have to be, "right at the edge of the compartment” where people are getting in and out of the cargo area. The "placement of that hook [made] it a very inadequate solution to its function.” Moreover, the hook itself was dangerous, the expert stated, because it was only 1/16-inch thick and because its "u” or "v” shape guided whatever came in contact with it — in this case plaintiff’s finger — to the narrowed space at the bottom of the hook’s opening. Commuter’s chief of maintenance testified and he agreed with the expert’s opinion that the design was defective.
The jury also had before it design prints and specifications for the doorway and the ladder, several photos of the cargo compartment, the replacement hanger and duplicate hangers manufactured by defendant of the same design as the original.
At the conclusion of plaintiff’s evidence, defendant moved to dismiss the complaint contending the hook which injured her was a replacement part and, therefore, that it was not liable under the substantial modification rule of Robinson v Reed-Prentice Div. (49 NY2d 471, supra). The court denied the motion, stating plaintiff made out a prima facie case because defective design, not defective manufacture, was involved. The court reasoned that if the jury found the replacement part was substantially the same as the original, that its design was defective and that it caused plaintiff’s injuries, she would be entitled to a verdict.
In its charge at the conclusion of the trial, the court advised the jury that plaintiff’s claim was based both on the defective design of the hanger and of the doorway to the cargo compartment. It instructed the jury that it must first determine whether the hanger was a replacement part and, if so, *585 whether it was substantially the same as the part designed by defendant as original equipment. It explained to the jury that a manufacturer is not liable for plaintiffs damages when its product has been altered but that it could be liable if the replacement part was substantially the same in design and location as the original. The court also submitted interrogatories to the jury which included the three following questions relating to defendant’s liability for defective design: "(1) On October 21, 1980 was the aft hanger a replacement part? (2) On October 21, 1980 was the aft hanger of substantially same design having substantially the same characteristics as the aft hanger as originally designed by Fairchild? (3) Was the design of the aft hanger defective, which defect was a proximate cause of the accident and plaintiffs injury?” Although the verdict sheet referred only to the defective hanger, the court explained to the jury in its charge that the question of whether the hanger was defective referred not only to the design of the hanger itself but also to its location in the opening of the cargo compartment. The jury answered all three questions "yes” and, after answering the remaining questions on comparative fault and third-party liability, it determined the verdict and apportioned the damages.
Imposition of strict liability against a manufacturer rests largely on public policy. The justification for it is that the seller, by marketing his product, has undertaken a special responsibility toward members of the consuming public who may be injured by it. The public has the right to expect that sellers will stand behind their goods. Thus, the burden of accidental injuries caused by products intended for consumption has been placed upon those who market them, to be treated as a cost of production because manufacturers are best able to protect against defective products and bear the cost if they fail (see generally, Sukljian v Ross & Son Co., 69 NY2d 89, 95; Codling v Paglia, 32 NY2d 330, 341; Restatement [Second] of Torts § 402 A, comment c).
Under familiar rules, a product may be defective because of a manufacturing flaw, design defect or because of the inadequacy or absence of warnings for the use of such product (see generally, Sukljian v Ross & Son Co., supra, at 89, 94; Voss v Black & Decker Mfg. Co., 59 NY2d 102, 106-107; Robinson v Reed-Prentice Div., 49 NY2d 471, 478-479, supra). In this case, there is no claim the specific aircraft involved in the accident was defectively made or had some mechanical flaw in it; plaintiff contends instead that all Metro II aircraft made by *586 defendant were defective because, with knowledge of the dangers and options available, defendant conceived a potentially dangerous design for the ladder hanger and its placement on the doorframe of the aircraft’s cargo compartment.
In Robinson v Reed-Prentice Div. (supra), we held that a manufacturer is under a nondelegable duty to design and produce a product that is not defective. A defectively designed product, we said, is one which "is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use” (id., at 479; see also, Micallef v Miehle Co., 39 NY2d 376, 385-386). The determination of whether a product is defectively designed requires a balancing of the likelihood of harm against the burden of taking a precaution against that harm (Robinson v Reed-Prentice Div., supra, at 479). A manufacturer has no control over the use of a product after it leaves it hands, however, so its liability is normally "gauged” as of the time the product was marketed (id.; see also, Cover v Cohen, 61 NY2d 261, 271; Bolm v Triumph Corp., 71 AD2d 429, 435, lv dismissed 50 NY2d 928; cf., Lopez v Precision Papers, 67 NY2d 871). Thus, we held in Robinson (supra) that the manufacturer was not liable for injury caused after the purchaser of a molding machine substantially altered it by removing a safety gate and safety interlocks. Even though the manufacturer could have foreseen that others would change the product and increase its potential for causing injury, we said the manufacturer had no opportunity to control the purchaser’s use of the product or avoid the purchaser’s modification of the product’s design.
The case before us differs from Robinson and others defendant relies on, cases in which the purchaser removed or altered safety mechanisms (Garcia v Biro Mfg. Co., 101 AD2d 779, revd on other grounds 63 NY2d 751 [bolts which held safety guard in place were cut]), removed original parts in the machine and substituted others of different design (Hansen v Honda Motor Co., 104 AD2d 850 [a motorcycle wheel and spokes]), or substituted parts of lesser quality (Mazzola v Chrysler France, S. A., 470 F Supp 24 [substituting flexible hot water hose which disengaged, for a "molded” hose]). In each of those cases, the purchaser changed not only the part but also the design of the part and injury resulted because of the change. In the case before us, the hanger was replaced but, as the jury found, the hanger design was not altered and it was *587 the manufacturer’s defective design — both of the hanger and of the compartment doorway — which caused injury.
Based upon the evidence before it, the jury could find that the hanger originally designed by defendant was defective because its utility as a ladder hanger was overridden by the dangers created by its use and that the manufacturer could have designed and located the hanger in a manner which preserved its utility while eliminating the dangers from its use (Lopez v Precision Papers, 67 NY2d 871, supra; Voss v Black & Decker Mfg. Co., 59 NY2d 102, 108, supra; Robinson v Reed-Prentice Div., supra, at 479). Thus, the traditional test of a defectively designed product was met. That the hanger actually involved in the accident was a replacement and not the original is not dispositive because in fabricating and installing a new part Commuter’s employees, as the jury found, did no more than perpetuate defendant’s bad design as defendant’s representatives foresaw they might.
The burden of plaintiffs accidental injuries should be placed on the manufacturer because it designed the defective product and placed it in the stream of commerce knowing that if the part broke it might be copied and replaced by the purchaser relying on the original design. Inasmuch as the defect was in the design, the manufacturer was the logical party in a position to discover the defect and correct it to avoid injury to the public. Placing the economic burden on the manufacturer under these circumstances does no more than induce it to design quality equipment at the outset and "discourage[s] misdesign rather than encourage[s] it” (Micallef v Miehle Co., 39 NY2d 376, 384, supra, quoting Palmer v Massey-Ferguson, 3 Wash App 508, 517; see also, Codling v Paglia, supra, at 341). Conversely, to insulate a manufacturer under such circumstances would allow it to escape liability for designing flimsy parts secure in the knowledge that once the part breaks and is replaced, it will no longer be liable.
The Appellate Division’s dismissal of plaintiff’s complaint was grounded on its conclusion that plaintiff’s claim was barred by the Robinson v Reed-Prentice Div. (supra) substantial modification doctrine. Finding that plaintiff presented a tenable claim, we note also that she established a prima facie case. Her expert testified that the replacement part appeared to have the same dangerous design as the original and photographs presented to the jury permitted them to compare the parts and reach a similar conclusion. *588 Thus, there was a "valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury” (Cohen v Hallmark Cards, 45 NY2d 493, 499).
There remains the question of the proper remedial action.
The Appellate Division’s alternate conclusion that the verdict was against the weight of the evidence is a factual determination and, as such, beyond this court’s review powers (see, Cohen v Hallmark Cards, supra, at 498; see also, Tate v Colabello, 58 NY2d 84, 86; Cohen and Karger, Powers of the New York Court of Appeals § 148, at 588 [rev ed]; 1 Newman, NY Appellate Practice § 4.04, at 4-12.2). In view of our resolution of the legal issues presented to us, the proper remedy is a new trial (Cohen v Hallmark Cards, supra, at 498-499).
Accordingly, the order of the Appellate Division should be reversed, the complaint reinstated and a new trial granted.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order reversed, with costs, complaint reinstated, and a new trial granted.

 There was conflicting evidence on whether the hanger which injured plaintiffs hand was the original part made by defendant or was a replacement part made by Commuter’s employees. The jury found it was a replacement.