**Robert Allen HART and Sheri Hart, His Wife, Plaintiffs,**

v.

**HYTROL CONVEYOR CO., INC., Defendant.**

**HYTROL CONVEYOR CO., INC., Third-party Plaintiff,**

v.

**DEL LABORATORIES, INC., w/Division known as LaSalle Laboratories, Third-party Defendant.**

No. 91–CV–776.

United States District Court, N.D. New York.

June 1, 1993.

---

Julian and Pertz (Richard Pertz, of counsel), Utica, NY, for plaintiffs.

Costello, Cooney & Fearon (Vincent A. O'Neil, of counsel), Syracuse, NY, for defendant and third-party plaintiff.

Kathleen C. Sassani, Syracuse, NY, for third-party defendant.

### MEMORANDUM–DECISION AND ORDER

HURD, Magistrate Judge.

## I. INTRODUCTION.

This is a diversity case. The instant complaint was filed by plaintiffs on July 8, 1991, alleging that the defendant, Hytrol Conveyor Co., Inc. ("Hytrol"), designed and manufactured a conveyor belt in a defective and unsafe manner so as to cause personal injuries to the plaintiff, Robert Allen Hart. Sheri Hart sues derivatively. Hytrol filed an answer on August 5, 1991, denying the material allegations in the complaint and raising certain affirmative defenses. On December 16, 1991, Hytrol filed a third-party complaint against Del Laboratories, Inc. ("Del"), the employer of the plaintiff.

After completion of discovery, Hytrol filed the present motion, with the appropriate documentation, for summary judgment seeking dismissal of the complaint pursuant to Federal Rules Civil Procedure 56. The plaintiffs filed affidavits and supporting documents in opposition. Del has taken no position. Oral argument was held on March 11, 1993, in Utica, New York. The court reserved decision.

## II. FACTS.

The plaintiff was employed as a maintenance mechanic by Del at its plant in Little Falls, New York. On December 7, 1990, he suffered the loss of the ring finger on his left hand, and fractures to his left arm, when his wedding ring was caught on a protruding screw that was affixed to a drive pulley on a conveyor belt system manufactured and sold by Hytrol, an Arkansas corporation located in Jonesboro, Arkansas. The conveyor belt system consisted of a 10′ long table, in the middle of which there was a 3″ wide conveyor belt. There were two pulleys to which the conveyor belt was connected—one at each end of the table. The drive pulley at the output end of the conveyor belt was a metal tube 28″ long and 4″ in diameter. At the time of its manufacture, the pulley was covered for 26″ of its length with a black rubber covering, or belting (referred to as "lagging"). This lagging was attached to the pulley with adhesive tape and a number of drive screws. Each of the drive screws was ⅞″ long. During the manufacturing process, holes were drilled into the drive pulley and the screws were driven through the lagging into the pulley.

Del, which manufactures cosmetics, had specially ordered the conveyor system in 1977 from Reliance Equipment, Co., a distributor of Hytrol. Sometime in 1990, Dominick R. Arduini, a supervisor at Del, directed Del mechanics to replace the original 26″ lagging installed by Hytrol with 5½″ red silicone lagging, the type commonly found on machines throughout the Del plant. The 5½″ lagging was secured to the drive pulley by punching it over the drive screws which remained from the manufacturing process. This new lagging left approximately 22″ of

the drive pulley without any lagging. As a result, a number of drive screws which originally secured the 26″ lagging to the drive pulley were left protruding from the drive pulley without any lagging to cover them. Therefore, the lagging covered only 5½″ of the drive pulley near its center, underneath the 3″ wide conveyor belt.

On the day of the accident, plaintiff was working with other Del mechanics to make an assembly line longer by placing a bridge about 1′ long and 4″ wide between the Hytrol conveyor system to a labeling system. After the bridge was in place, part of the lagging and duct tape was rubbing against, and catching upon, the conveyor system. As a result, the 3″ conveyor belt moved about 1½″ off center. Plaintiff was able to get the conveyor belt back on center, however, he noticed that a piece of duct tape was sticking out as the drive pulley revolved. In an attempt to tear off the piece of duct tape, and while the conveyor was operating, plaintiff reached over the drive pulley and caught his wedding ring on an exposed drive screw. The revolving motion of the drive pulley then pulled plaintiff's finger into the conveyor system and he sustained the aforedescribed injuries.

### III. *MOTION FOR SUMMARY JUDGMENT.*

A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc,* 982 F.2d 686, 689 (1st Cir.1993); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* In other words, a motion for summary judgment pursuant to Fed.R.Civ.P. 56 shall be granted only when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. *Lang v. Retirement Living*

*Pub. Company,* 949 F.2d 576, 580 (2d Cir. 1991). Therefore, "summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Thus, if the nonmoving party can not produce sufficient evidence to support the jury verdict, summary judgment is proper. *Id.* at 249, 106 S.Ct. at 2510. "In determining how a reasonable jury would decide, the Court must resolve all ambiguities and draw all inferences against the moving party." *Lang,* 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* "The judge's function is not to weigh the evidence and determine the truth of the matter," *Liberty Lobby,* at 249, 106 S.Ct. at 2511, "such is the prerogative of the finder of fact." *Murphy v. Provident Mutual Life Insurance Company,* 923 F.2d 923, 930 (2d Cir.1990) (Kearse, J., dissenting), *cert. denied,* —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). Therefore, the judge's role is "to determine whether there does indeed exist a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510.

### IV. *DISCUSSION.*

Plaintiffs allege that Hytrol was negligent in the design, manufacture, and sale of the conveyor system in that it failed to properly guard against and warn of the risks of personal injury to users of the conveyor system. Plaintiffs also allege that Hytrol negligently manufactured the conveyor system with defective materials and/or defective manufacturing process, and/or with a defective design. Finally, plaintiffs allege a cause of

action in strict products liability for defective design and failure to warn.

■ In New York, an injured person may recover against a manufacturer who places a product on the market upon a showing that the product which caused his injuries was defective. "A defect in a product may consist of a mistake in manufacturing, an improper design, or the inadequacy or absence of warnings for the use of the product." *Amatulli v. Delhi Constr. Corp.*, 77 N.Y.2d 525, 532, 571 N.E.2d 645, 648, 569 N.Y.S.2d 337, 340 (1991).

■ A product is defectively manufactured when it "does not conform in some significant aspect to the intended design, nor does it conform to the great majority of products manufactured in accordance with that design." *Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 128, 417 N.E.2d 545, 552, 436 N.Y.S.2d 251, 258 (1981) (Jason, J., dissenting). A defectively designed product, on the other hand, "is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." *Robinson v. Reed–Prentice*, 49 N.Y.2d 471, 479, 403 N.E.2d 440, 443, 426 N.Y.S.2d 717, 720 (1980). Finally, a product can be defective if the manufacturer fails to "provide adequate warnings regarding the use of the product." *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107, 450 N.E.2d 204, 207, 463 N.Y.S.2d 398, 401 (1983). Stated another way, a manufacturer may be liable if it fails to warn the user of "dangers inherent in the contemplated use or reasonably foreseeable misuse of the product." *Cramer v. Toledo Scale Co.*, 158 A.D.2d 966, 966, 551 N.Y.S.2d 718, 719 (4th Dep't 1990).

■■ The duty of a manufacturer to produce a safe product, however, does not exist beyond the point in time when the product leaves the possession and control of the manufacturer. *Sage v. Fairchild–Swearingen Corp.*, 70 N.Y.2d 579, 586, 517 N.E.2d 1304, 1307, 523 N.Y.S.2d 418, 421 (1987) ("A manufacturer has no control over the use of a product after it leaves its hands, however, so its liability is normally 'gauged' as of the time the product was marketed.") (*citing Robinson*, 49 N.Y.2d at 479, 403 N.E.2d at 443, 426 N.Y.S.2d at 720). As a result, "[a] manufacturer may not be cast in damages, either for negligence or products liability, where, after the product leaves the manufacturer's hands, there is a subsequent modification that substantially alters the product and it is the proximate cause of plaintiff's injuries." *Frey v. Rockford Safety Equipment Co.*, 154 A.D.2d 899, 899, 546 N.Y.S.2d 54, 55 (4th Dep't 1989). Moreover, "[s]ubstantial modifications of a product from its original condition by a third party which renders a safe product defective [and is the proximate cause of the plaintiff's injuries] are not the responsibility of the manufacturer." *Robinson*, 49 N.Y.2d at 479, 403 N.E.2d at 443, 426 N.Y.S.2d at 720. The New York Court of Appeals has concluded that "[p]rincipals of foreseeability ... are in opposite when a third party affirmatively abuses a product by consciously bypassing built in safety features." *Robinson*, 49 N.Y.2d at 480, 403 N.E.2d at 443, 426 N.Y.S.2d at 721.

■ Nevertheless, a manufacturer may be liable, even when the product's safety device is deliberately bypassed by a third party, if the product was "purposefully manufactured" to be operated without the safety device. *Lopez v. Precision Papers, Inc.*, 67 N.Y.2d 871, 873, 492 N.E.2d 1214, 1215, 501 N.Y.S.2d 798, 799 (1986), *aff'g* 107 A.D.2d 667, 669, 484 N.Y.S.2d 585, 587 (2d Dep't 1985). When such an instance arises, "it is for the jury to determine the scope of the product's intended purposes and whether the product was not reasonably safe when placed in the stream of commerce." *LaPaglia v. Sears Roebuck & Co.*, 143 A.D.2d 173, 177, 531 N.Y.S.2d 623, 627 (2d Dep't 1988), *appeal denied*, 74 N.Y.2d 624, 539 N.E.2d 1107, 541 N.Y.S.2d 979 (1989). The court now must proceed to an examination of whether the conveyor belt was defective at the time it left Hytrol's possession and control.

■ First, plaintiffs argue that the design of the conveyor system was defective because Hytrol could have used narrower lagging which would have required fewer drive

screws. When originally sold to Del, the drive pulley, although much wider than the 3″ conveyor belt, was wrapped by lagging 26″ in width, requiring numerous drive screws to hold down the lagging. After the 26″ lagging deteriorated, the drive pulley was wrapped with lagging that was only 5½″ in width, leaving a number of drive screws exposed. In support of their theory that Hytrol could have used narrower lagging, plaintiffs point to Hytrol's parts diagram, *see* exhibit "B", and the availability of such narrower lagging. Although, there is no direct proof in the record establishing where the replacement lagging came from, every indication exists that Del itself supplied the lagging.[1] However, even if the 5½″ lagging was ordered from Hytrol, by leaving the excess drive screws protruding from the pulley, Del created a new potential danger not attributable to Hytrol. *Sage*, 70 N.Y.2d at 586, 517 N.E.2d at 1307, 523 N.Y.S.2d at 421 ("Even though the manufacturer could have foreseen that others would change the product and increase its potential for causing injury, . . . the manufacturer had no opportunity to control the purchaser's use of the product or avoid the purchaser's modification of the product's design.")

Furthermore, at the time of the manufacture of the conveyor, the drive screws did not protrude above the surface of the lagging. As a result, it was not in a defective condition, nor was it unreasonably dangerous. Del consciously chose not only to replace the 26″ lagging with 5½″ lagging, but also failed to remove the drive screws that were not needed, thereby creating a danger that was obvious to the naked eye and unrelated to any defect in the conveyor system. If Del had used replacement lagging of proper size width to cover the entire pulley—regardless of their subjective opinion that 26″ lagging was unnecessary; or in the alternative, had they removed the drive screws that became exposed after installing the incorrect size lagging, this accident would not have occurred.

Plaintiffs next argue that since the conveyor belt ran on only 3″ of lagging and the drive pulley was covered with 26″ of lagging, 23″ of the lagging was "exposed and without function". However, such argument lends little to support their contention that a jury question exists. The drive pulley was 28″ wide so as to accommodate belts of differing widths. This feature did not make the conveyor system defective. When it left Hytrol's possession and control, the drive screws on the pulley system were not protruding out of the pulley. To the contrary, they were tightly secured through the lagging in a button effect, flush with the top of the lagging. Drive screws became exposed, not because Hytrol designed or manufactured a defective product but because Del failed to properly maintain the conveyor system in a safe manner. *See Hansen v. Honda Motor Co.*, 104 A.D.2d 850, 480 N.Y.S.2d 244 (1984).

Plaintiffs next argue that it was obvious to Hytrol that the lagging could come loose or be broken, causing the drive screws to be exposed, and that a guard over the area would have prevented the accident. Although it was certainly foreseeable that the lagging could come loose, be damaged, or simply wear out, a manufacturer's duty to provide a safe product does not translate into an obligation to insure that the product will not cause injury due to damage or deterioration. *Micallef v. Miehle, Co.*, 39 N.Y.2d 376, 383, 348 N.E.2d 571, 576, 384 N.Y.S.2d 115, 119 (1976). This accident occurred because Del replaced the original lagging with lagging that was of an inadequate size and then left drive screws exposed; not because the original lagging became loose, worn, or broken. Hytrol was not required to design a guard to protect plaintiff from injuries caused because Del employees created a dangerous condition thirteen years after the manufacture and delivery of the conveyor system.

Plaintiff also argues that Hytrol is liable because he caught his finger at some point

---

1. Hytrol made available in its parts catalogue 5½″ lagging; however, nothing in plaintiffs' submissions tends to demonstrate that Hytrol expressly or impliedly stated that this size lagging was proper for the 28″ drive pulley. The 5½″ lagging may have been available for any number of uses entirely unconnected to use as a replacement part for a 28″ drive pulley.

five inches from the end of the pulley "in an area where no lagging would ever have been needed to carry the three inch belt in the center of the 28″ [drive pulley]." However, plaintiffs have offered no testimony, expert or otherwise, stating that the condition of the conveyor system was defective because it contained a drive pulley with excess lagging. When the conveyor system left the possession of Hytrol, there was simply no chance that plaintiff could catch his finger on a drive screw in the manner of this accident.

■ Plaintiffs offer the affidavit of Carl J. Thurnau in support of their contention that issues of fact are in dispute. Specifically, they assert that Thurnau's affidavit establishes that the conveyor system was unreasonably dangerous in that it lacked proper instructions, proper warnings, properly placed emergency shut-offs, and adequate guardings. In addition, Mr. Thurnau opines that based on the record in the case, employees were given no formal training in the use of the conveyor system, there was no emergency stop system, and no evidence of any emergency action plan; and finally, he claims that there were raised portions of the lagging which could catch or snag an operator's fingers, hands, hair, or loose clothing.[2] However, such conclusory assertions without any empirical data or other evidentiary proof, such as evidence of industry-wide standards to bolster Mr. Thurnau's opinion, is insufficient to create a triable issue of fact precluding summary judgment. *Amatulli*, 77 N.Y.2d at 533, 571 N.E.2d at 649, 569 N.Y.S.2d at 341; *Van Buskirk v. Migliorelli*, 185 A.D.2d 587, 589, 586 N.Y.S.2d 378, 380 (1992), *appeal denied*, 80 N.Y.2d 761, 607 N.E.2d 817, 592 N.Y.S.2d 670 (1992). In addition, similar to the expert's affidavit in *Van Buskirk*, Mr. Thurnau does not state that this accident would not have occurred had Hytrol implemented his recommendations. *Id.* In fact, this accident did not occur because of any of the failures Mr. Thurnau attributed to Hytrol.

The only conclusion which can be reached is that the conveyor system became defective when Del failed to replace the original lagging with lagging of sufficient width, and when it left numerous drive screws exposed. Del's replacement lagging modified the design of the conveyor system, and therefore released Hytrol of any liability for the happening of this accident. *Matera v. Catanzano*, 161 A.D.2d 687, 688, 555 N.Y.S.2d 823, 824 (2d Dep't 1990) ("The record establishes that the conveyor belt in question had been altered subsequent to its manufacture, and that the accident would not have happened had this alteration not been made.")

■ Plaintiffs also seek to introduce evidence that Hytrol was aware of a reasonably available foreseeable alternative method of securing lagging to the pulley, called vulcanization. Hytrol adopted vulcanization in 1989, twelve years after the conveyor system was manufactured. For the purposes of determining if a product was defective, however, the date that the conveyor system left the hands of Hytrol is the determinative date. *Caprara*, 52 N.Y.2d at 124, 417 N.E.2d at 550, 436 N.Y.S.2d at 255–56. Since plaintiffs have not offered any evidence that vulcanization was feasible or even available in 1977, evidence of subsequent modifications in the design of the conveyor system is inadmissible, and therefore, does not create an issue of fact for the jury. *Cover v. Cohen*, 61 N.Y.2d 261, 271–72, 461 N.E.2d 864, 868–69, 473 N.Y.S.2d 378, 382–83 (1984).

■ Moreover, even if vulcanization was available in 1977, there is no requirement that a manufacturer make the safest or best product, *Jones v. Lederle Laboratories*, 785 F.Supp. 1123, 1126 (E.D.N.Y.1992), *aff'd*, 982 F.2d 63 (2d Cir.1992), it is only necessary that it sells a product that is reasonably safe for its intended, as well as unintended yet reasonably foreseeable use. *Voss*, 59 N.Y.2d at 108, 450 N.E.2d at 208, 463 N.Y.S.2d at 402. As it relates to this accident, Hytrol fulfilled this obligation in the manufacture of the conveyor system it sold to Del. Plaintiffs have offered no evidence that Hytrol had available to it at the time of manufacture a

**2.** Since plaintiff did not catch or snag his ring finger on a raised portion of the lagging, this allegation is immaterial.

superior alternative from which the jury could conclude that the utility and cost of the alternative design made the conveyor system, as manufactured, "not reasonably safe". *Cover*, 61 N.Y.2d at 266–67, 461 N.E.2d at 866, 473 N.Y.S.2d at 380.

 Plaintiffs' claim that Hytrol is liable because it failed to warn of the dangers of the exposed drive screws is also meritless. First, when Hytrol inspected the conveyor system after the accident, it noticed that the conveyor had been painted over a number of times, covering the warnings it had placed on the conveyor system. It was Del's practice to periodically paint over the machines in the plant. Therefore, Hytrol is not liable due to Del's alteration of any warning labels contained on the conveyor system. *Van Buskirk*, 185 A.D.2d at 590, 586 N.Y.S.2d at 380. Second, plaintiff testified that he was aware of the drive screws protruding from the pulley, and as such, any warning affixed to the conveyor would not have warned him of the dangers any further than that which he had already acquired, or than was 'readily discernible' from observation of the drive pulley. *Baptiste v. Northfield Foundry and Machine Co.*, 184 A.D.2d 841, 843–44, 584 N.Y.S.2d 221, 223 (3rd Dep't 1992); *Lombard v. Centrico, Inc.*, 161 A.D.2d 1071, 1072, 557 N.Y.S.2d 627, 628 (3rd Dep't 1990) (There is no duty to warn "when the injured party is already aware of the specific hazard."); *Van Buskirk*, 185 A.D.2d at 590, 586 N.Y.S.2d at 380–81. Therefore, the lack of warnings about the dangers of the exposed drive screws was not a proximate cause of plaintiff's injuries. Third, there is no evidence that Hytrol had any notice of the protruding drive screws created by Del. Under such circumstances, the obligation to warn, if any, rested with Del and not Hytrol.

## V.  *CONCLUSION.*

The basic facts are not in dispute. This accident was caused as a result of the joint negligence of the plaintiff and Del. Hytrol is entitled to summary judgment as a matter of law.

Therefore, it is ORDERED, that

1.  The complaint is dismissed on the merits;

2.  The third-party complaint is dismissed as moot;  and

3.  The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.