**David WELCH, Plaintiff,**

**v.**

**DURA–WOUND, INC., and Protective Coating Developments, Inc., Defendants.**

**PROTECTIVE COATING DEVELOPMENTS, INC., Third-party Plaintiff,**

**v.**

**PRIMARY PLASTICS, INC., Third-party Defendant.**

Civ. A. No. 93–CV–640.

United States District Court, N.D. New York.

Aug. 11, 1995.

Coughlin & Gerhart, Binghamton, NY (Peter H. Bouman, of counsel), for plaintiff.

Smith, Sovik, Kendrick & Sugnet, Syracuse, NY (Peter J. Cambs, of counsel), for defendant Dura–Wound, Inc.

Phelan, Burke & Scolamiero, Albany, NY (John J. Phelan, III, of counsel), for defendant/third-party plaintiff Protective Coating Developments, Inc.

Levene, Gouldin & Thompson, Binghamton, NY (William Yaus, of counsel), for third-party defendant Primary Plastics, Inc.

**MEMORANDUM–DECISION and ORDER**

HURD, United States Magistrate Judge.

## I. INTRODUCTION.

Pending before this court are the summary judgment motions of defendants Dura–Wound, Inc. ("Dura–Wound") and Protective Coating Developments, Inc. ("PCD"), pursuant to Fed.R.Civ.P. 56; and plaintiff's motion for leave to amend the complaint pursuant to Fed.R.Civ.P. 15(a). Oral argument was heard on July 13, 1995, and the court reserved decision at that time. The following constitutes the court's decision on all three motions.

The instant complaint was filed by plaintiffs on May 18, 1993, alleging that defendant Dura–Wound was negligent for manufacturing and selling an unsafe machine which was not equipped with proper guards or emergency mechanisms, and should be held strictly liable for their actions. Dura–Wound filed an answer on June 14, 1993, denying the material allegations of the complaint. On March 28, 1994, plaintiff amended his complaint to include PCD, as a defendant. Plaintiff claims PCD was: (1) strictly liable, and negligent for selling the machine without proper safety guards or warnings; (2) strictly liable and negligent because it added the hub and universal joint to the machine making it substantially more dangerous than originally designed; and (3) it breached an implied warranty of merchantability by selling a nonmerchantable machine. PCD filed a third-party complaint against Primary Plastics, Inc., on December 1, 1994.

## II. FACTS.

Dura–Wound manufactured the Model 10–C Winder machine ("machine") in 1984. Its purpose was to spin a mandrel (a pipe on which other pipes are molded) to make fiberglass pipe. Dura–Wound did not sell a mandrel with the machine. PCD bought the machine from an uninvolved party, and eventually sold it to third-party defendant, Primary Plastics, in 1992, along with thirteen components. PCD made no modifications to the machine, and sold it "as is," without any warranty. PCD is in the business of manufacturing fiberglass and epoxy-wound conduits. It is not in the business of selling filament winding machines such as this one. Upon obtaining the machine from PCD, Primary Plastics used a hub and universal joint to attach a mandrel to the machine, and placed it in operation.

Plaintiff was an employee of Primary Plastics. On October 29, 1992, he was in the process of helping two other employees make fiberglass pipe using the Dura–Wound machine when the accident at issue took place. While working at the machine aforementioned, his shirt sleeve became caught on a bolt attaching the spinning hub to the universal joint. He was pulled into the machine and suffered severe injury to his right arm and shoulder.

## III. DISCUSSION.

### A. Dura–Wound's Motion For Summary Judgment:

A motion for summary judgment must be granted "when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact," *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991), and the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). "In determining how a reasonable jury would decide, the Court must resolve all ambiguities and draw all inferences against the moving party." *Lang*, 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby*, 477 U.S. at 261, 106 S.Ct. at 2516.

In order for the plaintiff to establish a negligence claim, he must show that the defendant was in some form negligent; and that the negligence of the defendant was a proximate cause or legal cause of the injury herein sustained.

"In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe, and that the defective design was a substantial factor in causing plaintiff's injury." *Voss v. Black and Decker Mfg. Co.,* 59 N.Y.2d 102, 107, 463 N.Y.S.2d 398, 402, 450 N.E.2d 204, 208 (1983). The plaintiff claims the machine was defective because it was not manufactured with guards over the spinning mandrel, and did not come with any instructions or warnings concerning the attachment of the mandrel. The plaintiff must "present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." *Voss,* 59 N.Y.2d at 108, 463 N.Y.S.2d at 402, 450 N.E.2d at 208.

■ Dura–Wound argues that the case at hand is similar to *Hart v. Hytrol Conveyor Co., Inc.,* 823 F.Supp. 87 (N.D.N.Y.1993). In *Hytrol,* the plaintiff was injured when his finger was caught in a conveyor belt system. The court granted Hytrol's motion for summary judgment because, although it manufactured the conveyor system, the system had been altered from its original state. The court stated that: "Hytrol was not required to design a guard to protect plaintiff from injuries caused because Dell employees created a dangerous condition 13 years after the manufacture and delivery of the conveyor system." *Id.* at 92.

Dura–Wound contends that the facts are the same since it did not manufacture the hub and universal joint by which the plaintiff was injured, and could not have known the parts were going to be added. Dura–Wound, therefore, could not have created any guards or warnings to protect plaintiff from the injury.

Plaintiff argues the *Hytrol* case is distinguishable on the facts. The plaintiff's employer in that case created a danger which was not there before the modification of the conveyor system. In the case at hand, plaintiff argues that *Feuerverger v. Hobart Corp.,* 738 F.Supp. 76 (E.D.N.Y.1990), is analogous. In *Hobart,* a plaintiff was injured by a slicing attachment added to a Hobart mixer. The mixer was made by Hobart but the slicing attachment was not. The District Court denied defendant's motion for summary judgment holding that, "Unless the mixer was on and providing a power source for the attachment, it could not function. The Defendant's failure to provide an illuminated dial or its equivalent and/or a non-spring load mechanism for the control buttons could have been a substantial factor in causing Feuerverger's injuries". *Id.* at 79. Plaintiff argues in the present case that unless the hub and universal joint were powered by the machine, it could not function. Therefore, Dura–Wound's failure to provide a guard on the machine was a substantial factor in causing Welch's injury.

In *Hobart,* the court held that since the defendants purposefully designed the mixer to accept various accessories, including the slicing attachment, the addition of the attachment could not be considered a substantial modification. *Id.* In a similar manner, Dura–Wound purposefully designed the machine to power mandrel attachments, and therefore the addition of a mandrel attachment cannot be considered unusual or a substantial modification. Seventy-five percent of the winders sold by Dura–Wound are sold without a mandrel. Dura–Wound knew that customers, therefore, must attach the mandrel themselves. While Dura–Wound claims that it could not possibly have anticipated that Primary Plastics would attach the mandrel in the manner in which it did, these are questions of fact for a jury to decide, and summary judgment would be improper.

In its proposed amended complaint, plaintiff also claims that the failure by Dura–Wound to provide proper instructions or warnings on the use of the product, and to warn of the dangers of not installing or using it correctly, renders the product defective.

*See McLaughlin v. Mine Safety Appliances Co.,* 11 N.Y.2d 62, 69, 226 N.Y.S.2d 407, 412, 181 N.E.2d 430, 434 (1962); *Oliver v. NAMCO Controls,* 161 A.D.2d 1188, 1189, 556 N.Y.S.2d 430, 430–31 (4th Dep't 1990). It is alleged that Dura–Wound gave virtually no instructions on the attachment of a mandrel to the machine. This may be especially important in the light of the fact that the machine was designed for such an attachment.

There are genuine issues of material fact as to the modification of the machine, and whether Dura–Wound should have provided instructions or warnings on the use of the product and the attachment of the mandrel.

### B. *PCD's Cross-motion For Summary Judgment:*

PCD bases its argument on the holding of *Sukljian v. Charles Ross & Son Co.,* 69 N.Y.2d 89, 511 N.Y.S.2d 821, 503 N.E.2d 1358 (1986). PCD claims to have sold the machine to Primary Plastics in January of 1992. It states that it sold the machine "as is," without warranty, and without any modifications. The machine was not installed by PCD and it claims it is not in the business of selling winding machines, and this was an isolated incident. Its claim is that Primary Plastics attached the hub, universal joint, and mandrel parts to the machine. PCD argues that it was a casual seller of the product and should not be held liable for plaintiff's injury.

*Sukljian* dealt with a strict liability and negligence claim against General Electric by a plaintiff who was injured by the equipment he purchased from GE at an auction. The equipment was sold "as is, where is" and was surplus equipment. The court held that not every seller is subject to strict liability. *Id.* at 95. The court cited Restatement [Second] of Torts § 402(a) comment F, concluding, "[t]his section is also not intended to apply to sales of the stock of merchants out of the usual course of business, such as execution sales, bankruptcy sales, bulk sales, and the like." The *Sukljian* Court found that the defendant was not strictly liable or negligent because there was no showing that it was regularly engaged in the business of selling this type of equipment. *Sukljian,* 69 N.Y.2d at 96–97, 511 N.Y.S.2d 821, 503 N.E.2d 1358.

PCD is in the business of selling fiberglass and epoxy-wound conduit. The sale of the winder machine to Primary Plastics was a casual sale of surplus equipment and meets the *Sukljian* standard. Plaintiff's complaint alleges that PCD added the hub and universal joint to the machine before selling it to Primary Plastics and failed to provide proper guards and warnings. Plaintiff has not offered any proof of these claims, however, and does not oppose PCD's motion.

### C. *Expert Witness.*

Dura–Wound also raises the argument that *Daubert v. Merrell Dow Pharmaceuticals Inc.,* — U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), would bar the admission of plaintiff's expert as a witness. In *Daubert,* the reliability of clearly "scientific" testimony was questioned. The application of *Daubert* to this case has not been fully briefed. Therefore, this argument has not been addressed, and is denied without prejudice to renew.

### D. *Welch's Cross-motion For Leave To Amend His Complaint:*

Plaintiff has moved to amend his amended complaint. *See* Fed.R.Civ.P. 15(a). The plaintiff seeks to add the allegation against Dura–Wound that the machine was not sold with adequate parts or instructions concerning the proper assembly of a mandrel attachment, and adequate warnings to alert the users of the dangers of improper assembly of the mandrel attachment. The defendant has not raised any opposition to plaintiff's motion. The claim arises out of the same facts as the original complaint, states a meritorious claim for relief, and will not result in any delay or prejudice. Therefore, the plaintiff's motion to amend his complaint will be granted.

### IV. *CONCLUSION.*

PCD's motion for summary judgment is granted as to all causes of action against them. Therefore, the third-party complaint against third-party defendant, Primary Plastics is dismissed as moot. Dura–Wound's

motion for summary judgment is denied as to all causes of action. The court extends the deadline for joinder of parties and amendment of the pleadings. Plaintiff's motion to amend the complaint is granted. Dura–Wound is granted permission to commence a third-party action against Primary Plastics.

Accordingly, it is

ORDERED, that

1. Dura–Wound, Inc.'s motion for summary judgment is DENIED;

2. Protective Coating Developments, Inc.'s motion for summary judgment is GRANTED and the complaint against it is dismissed;

3. The third-party action is dismissed as moot;

4. Plaintiff's motion for leave to amend the complaint is GRANTED, and he has thirty (30) days to file and serve his amended complaint; and

5. Dura–Wound, Inc. may commence a third-party action against Primary Plastics, Inc. within thirty (30) days of service of the amended complaint.

IT IS SO ORDERED.