■ PABLO LOPEZ et al., Appellants-Respondents, v PRECISION PAPERS, INC., et al., Defendants; CLARK EQUIPMENT CO., INC., Respondent-Appellant, and LONG ISLAND COLLEGE HOSPITAL, Respondent. (And Third and Fourth-Party Actions.) — In an action to recover damages for personal injuries, etc., plaintiffs appeal from so much of an order of the Supreme Court, Kings County (Bellard, J.), dated May 5, 1982, as granted the motion of defendant Clark Equipment Co., Inc., for summary judgment "to the extent that defendant, CLARK EQUIPMENT CO., has no liability for any claim * * * based solely upon the removal of the removable overhead safety guard from the forklift vehicle in question", and defendant Clark Equipment Co. cross-appeals from so much of the same order as granted it only "partial" instead of full summary judgment.

Order modified by deleting the provisions granting defendant Clark Equipment Co.'s motion for summary judgment in part and substituting a provision denying said motion *in toto*. As so modified, order affirmed, insofar as appealed from, with costs to plaintiffs.

Plaintiff Pablo Lopez was an employee of third-party defendant Mutual Paper Co. On June 13, 1975, he was severely injured when a large roll of paper fell from a wooden pallet on a forklift machine he was operating within the warehouse and struck him on the head. As a result of the accident, Lopez was rendered a quadraplegic. He thereafter brought this action sounding in negligence, products liability, breach of warranty and medical malpractice. The latter claim, predicated on the theory that his injuries were aggravated by ambulance attendants, is not now before us.

The forklift on which Lopez was injured was owned by his employer and was manufactured by defendant Clark Equipment Co. (hereinafter Clark). The claim against the manufacturer is

premised upon the theory that certain design defects allegedly exist in the forklift in question which violated regulations of the Occupational Safety and Health Administration. Specifically, three design defects are claimed, i.e., "(a) a non-welded, easily removable overhead guard; (b) the absence of a signal device that would indicate the weight of the load being raised or hazards to the vehicle and driver; and (c) the failure to provide guidelines and specifications for the design, construction and loading of pallets".

Clark sought summary judgment dismissing the complaint and any cross claims asserted against it, claiming, *inter alia,* that the overhead guard on the forklift operated by Lopez at the time of the accident had been previously removed at the direction of, and by employees of, Mutual Paper Co. and that, in essence, Lopez was chargeable with contributory negligence as a matter of law (at the time of the accident contributory negligence was an absolute bar to recovery) because he allegedly violated a company rule which required that only trucks with overhead guards were to be used for movement of pallets inside the warehouse.

Special Term granted the motion in part by directing the entry of summary judgment, insofar as pertinent, "to the extent that defendant, CLARK EQUIPMENT CO., has no liability for any claim * * * based solely upon the removal of the removable overhead safety guard from the forklift in question". The court reasoned that a manufacturer may not be held liable for the negligent alteration of the product by a user, even if the alteration is foreseeable. We find that *Robinson v Reed-Prentice Div.* (49 NY2d 471), the case relied upon by Special Term, does not, as a matter of law, bar plaintiffs' claim on this issue.

The determination of whether a product is defectively designed involves a balancing test: the likelihood of harm must be weighed against the burden of taking precaution against that harm (see *Cover v Cohen,* 61 NY2d 261, 270; *Voss v Black & Decker Mfg. Co.,* 59 NY2d 102, 109). The responsibility of the manufacturer to produce a product that is not defective is gauged as of the time the product leaves the manufacturer's hands, so that "[s]ubstantial modifications of a product from its original condition by a third party which render a safe product defective are not the responsibility of the manufacturer" (*Robinson v Reed-Prentice Div., supra,* p 479). The court in *Robinson* went on to explain (p 481) that "[m]aterial alterations at the hands of a third party which work a substantial change in the condition in which the product was sold by destroying the functional utility of a key safety feature, however foreseeable

that modification may have been, are not within the ambit of a manufacturer's responsibility".

In *Robinson* (*supra*), the modification was so substantial that it permanently destroyed the functional utility of a safety gate. Under no view of the facts could one conclude that that modification was intended either for versatility of functioning or for ease of cleaning. We believe that *Robinson* represents a sensible limitation on the scope of manufacturer liability lest a manufacturer be made an insurer against all injuries that might arise from the use or misuse of a product.

The facts here simply do not approach those of *Robinson* (*supra; cf. Bolm v Triumph Corp.,* 71 AD2d 429, 435, mot for lv to app dsmd 50 NY2d 928; *Jiminez v Dreis & Krump Mfg. Co.,* 736 F2d 51). Because of the ease with which the overhead guard could be removed and the forklift's added versatility when operated without the guard, there is a legitimate jury question as to the scope of the forklift's intended purposes (*Voss v Black & Decker Mfg. Co., supra,* p 109; *Cepeda v Cumberland Eng. Co.,* 76 NJ 152; *Jiminez v Dreis & Krump Mfg. Co., supra*). In short, the jury must ascertain whether in light of these factors the manufacturer, given its resources and expertise, breached its duty by placing a product on the market that is not reasonably safe (see *Finnegan v Havir Mfg. Corp.,* 60 NJ 413, 423; *Jiminez v Dreis & Krump Mfg. Co., supra*).

Finally, we note that the issue of contributory negligence is a jury question in all but the clearest cases (*MacDowall v Koehring Basic Constr. Equip.,* 49 NY2d 824, 827; *Wartels v County Asphalt,* 29 NY2d 372). This is not such an exceptional case in which summary disposition is warranted.

Accordingly, the order appealed from should be modified to the extent specified above. Titone, J. P., Gibbons and O'Connor, JJ., concur.

Rubin, J., dissents and votes to affirm the order, insofar as appealed from, with the following memorandum: At the time he was injured, Pablo Lopez (hereinafter plaintiff) was operating a forklift without the protective overhead guard which had been installed by the manufacturer, Clark Equipment Co. (Clark). The overhead guard had been removed at the direction of plaintiff's employer, Mutual Paper Co., to enable the forklift to enter trucks in order to load and unload merchandise. Mutual Paper had removed the overhead guard on two of its eight forklifts and had a rule which required the two forklifts without overhead guards to be used only to load and unload trucks. The movement of merchandise inside the warehouse was to be made only by forklifts with overhead guards. Plaintiff, a forklift operator with

five years' experience, had, in the past, operated a forklift with an overhead guard whenever directed to load or unload merchandise from the balcony area of the warehouse.

Based on these facts, it can only be inferred that plaintiff, an experienced operator, knew the obvious danger that was present in operating a forklift without an overhead guard in an area where objects are stacked above head level (cf. *Mata v Clark Equip. Co.,* 58 Ill App 3d 418). On the day of the accident, plaintiff was ordered to unload a wooden pallet of paper rolls from a stack of such merchandise in the warehouse. Although the pallet of paper rolls was not located in the balcony, its removal from the stack required the fork blades to be raised about 102 inches off the ground before being inserted inside the pallet. At the time he was given this order, plaintiff was operating a forklift whose overhead guard had been removed. In derogation of his employer's rule, but in accordance with his shipping clerk's instructions, plaintiff went to unload the pallet with the subject forklift. After raising the fork blades over his head and inserting them inside the wooden pallet, plaintiff was injured by a roll of paper which fell from the pallet onto his head.

In *Robinson v Reed-Prentice Div.* (49 NY2d 471, 475), the Court of Appeals held that a "manufacturer of a product may not be cast in damages, either on a strict products liability or negligence cause of action, where, after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of plaintiff's injuries". To adapt the forklift for use in trucks, plaintiff's employer consciously modified the forklift by removing the overhead guard. Said modification was the proximate cause of plaintiff's injuries.

Plaintiff seeks to avoid the holding in *Robinson* (*supra*) by alleging that Clark intentionally designed the subject forklift with a readily removable overhead guard to increase the forklift's versatility, i.e., the overhead guard could be removed to enable the forklift to operate in low-clearance areas, such as trucks. By designing a removable overhead guard to increase the forklift's versatility, plaintiff premises liability on the theory that Clark could have reasonably foreseen that on an occasion, such as the one at bar, the overhead guard would not be reattached to the forklift before the resumption of operations in an open area and that Clark could have equipped the forklift with an interlock safety mechanism that would have prevented the lift from being extended above the operator's head if the overhead guard was not in place. Since a question of fact exists as to whether Clark intended to increase the functional utility of

the forklift by designing a removable overhead guard, the majority is of the opinion that the holding in *Robinson* would not bar this action as a matter of law. I respectfully disagree with my learned brethren.

Assuming, *arguendo,* that plaintiff could establish this fact at trial, said fact would not suffice to establish a prima facie case of negligent design. Under *Robinson (supra)*, a manufacturer has no duty to install a backup safety device in its product even though it is foreseeable that the user may circumvent the safety device already provided with the product which is capable of preventing the injury in question. A brief recitation of the development of case law in products liability actions will demonstrate that the imposition of liability on Clark for failing to install an interlock mechanism to prevent the lift from being raised above the height of the operator merely because Clark could have foreseen that the forklift may be operated, intentionally or carelessly, without the overhead guard in an open area would be an unwarranted extension of a manufacturer's liability.

In *Posey v Clark Equip. Co.* (409 F2d 560, cert den 396 US 940), the plaintiff was injured by a falling carton while operating a forklift that was not equipped with an overhead guard in a high-stack area in his employer's warehouse. Clark had designed that forklift without a guard so that it could enter low-clearance areas such as street trucks. The forklift was also capable of lifting an article nine feet off the ground. Clark offered a guard as an optional accessory which could be installed in about 10 minutes. However, plaintiff's employer did not purchase the guard. Since the manufacturer had designed a forklift for use both in areas where the guard is unnecessary (low-clearance areas) and where a guard may be deemed necessary (high-stack areas in a warehouse), the plaintiff sought to impose liability on the manufacturer on the premise that it failed to supply a guard or give warning that the guard should be installed during operations in high-stack areas. Because the danger of an object falling from a high-stack area on a forklift operator who was not protected by an overhead guard was obvious, the Seventh Circuit affirmed the trial court's directed verdict in favor of the manufacturer under a standard analogous to the patent-latent rule applied in *Campo v Scofield* (301 NY 468). Under the patent-latent rule, a manufacturer only owed a duty to make its product free from latent defects and concealed dangers; there was no duty to guard against injury from a patent peril or from a source manifestly dangerous.

The rigidity of the *Campo* rule, which precluded recovery whenever the defect was patent, was relaxed in *Micallef v Miehle Co.* (39 NY2d 376). Under the *Micallef* rule,

"a manufacturer is obligated to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended * * * as well as an unintended yet reasonably foreseeable use * * *

"What constitutes 'reasonable care' * * * involve[s] 'a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm'" (*Micallef v Miehle Co., supra,* pp 385-386, citing 2 Harper and James, Torts, § 28.4).

Under the *Micallef* rule, a manufacturer, such as defendant in *Posey (supra)*, who designed a forklift for use in low-clearance areas but also capable of lifting objects above the operator's head, could arguably be held liable for an injury which a removable or retractable overhead guard would have prevented if it sold the forklift without such a guard. A manufacturer who designed a forklift for use in *low*-clearance areas could reasonably conclude that an overhead guard would not be necessary to protect the operator from falling objects because the restricted head room acts as a safety device by precluding the forklift from raising objects above the operator's head. Furthermore, an overhead guard that was permanently affixed to that forklift could bar its entry into low-clearance areas and destroy the functional utility of the product. However, if the same forklift is also capable of lifting objects above the operator's head, the manufacturer could reasonably foresee that said lift would be used for the unintended purpose of loading and unloading objects in a *high*-stack area of a purchaser's warehouse. The risk of serious injury from this unintended use of the forklift is reasonably foreseeable. Therefore, if the cost of manufacturing a removable or retractable overhead guard would not make the forklift so expensive as to price the product out of the market nor destroy its functional utility in low-clearance areas, a manufacturer who merely sold the guard as an optional, rather than a required, safety feature would be liable under the *Micallef* rule for an injury which such guard would have prevented (see *Brandon v Yale & Towne Mfg. Co.,* 342 F2d 519; *Christopherson v Hyster Co.,* 58 Ill App 3d 791 [applying a standard of analysis similar to the *Micallef* rule]; see, generally, Products Liability: Forklift Trucks, Ann., 95 ALR3d 541, § 3, pars [a], [d]; § 4, par [g]; Products Liability: Modern Cases Determining Whether Product is Defectively Designed, Ann., 96 ALR3d 22, § 14, par [a];

Products Liability: Alteration of Product After it Leaves Hands of Manufacturer or Seller As Affecting Liability For Product-Caused Harm, Ann., 41 ALR3d 1251).

In the instant case, if Clark designed the forklift for use in low-clearance areas, it complied with a manufacturer's duty as defined in *Micallef* because Clark sold the subject forklift with a removable overhead guard. Having provided a safety device capable of preventing the subject injury, the majority's holding would extend a manufacturer's duty one step further by requiring the installation of a backup safety mechanism because it is foreseeable that the purchaser or user may intentionally or carelessly circumvent the furnished safety device.

Although our sister State of New Jersey has recognized that where a safety guard is required to be removed frequently in the normal course of operation of the machine, a manufacturer's duty may extend to equipping its product with a backup safety device (an electronic interlock mechanism) that would prevent the operation of the machine without the guard (see *Cepeda v Cumberland Eng. Co.,* 76 NJ 152), my research has not disclosed a case in this jurisdiction which would so extend a manufacturer's duty. To the contrary, the Court of Appeals in *Robinson* unequivocally stated that a "manufacturer's duty * * * does not extend to designing a product that is impossible to abuse or one whose safety features may not be circumvented" (*Robinson v Reed-Prentice Div.,* 49 NY2d 471, 480-481, *supra*).

Based on the undisputed facts, the circumvention of the overhead guard in this case was the result of either the operator's careless conduct or his employer's intentional decision to increase productivity. The obvious danger of operating a forklift in an open area without a protective overhead guard is inferably known to an experienced forklift operator such as plaintiff. If there were other forklifts available with overhead guards for use to comply with his superior's orders to unload the wooden pallet, plaintiff's use of the forklift without the guard in an open area can only be characterized as careless conduct. However, a manufacturer is under no duty to "incorporate safety features into its product so as to guarantee that no harm will come to every user no matter how careless or even reckless" (*Robinson v Reed-Prentice Div., supra,* p 481). Furthermore, if all the other forklifts with overhead guards were in use at the time plaintiff was directed by his superior to unload the pallet with a forklift whose overhead guard had been removed to permit its use inside trucks, then it is only inferable that his employer made a conscious decision to increase productivity by permitting the use of the subject forklift in an open area instead of delaying the

unloading process for the time it takes to reattach the overhead guard. While it may be foreseeable that an employer will abuse a product to meet its own-imposed production needs by bypassing a built-in safety feature, responsibility for the willful choice may not fall on the manufacturer (*Robinson v Reed-Prentice Div., supra,* pp 480-481).

The duty of a manufacturer is not an open-ended one. It extends to the design and manufacture of a finished product which is safe at the time of sale. If Clark designed the forklift for use in low-clearance areas as well as open areas, Clark satisfied this duty by selling the forklift with a removable overhead guard.

Neither a purchaser's conscious decision to bypass a safety device, which is provided with the product and capable of preventing the injury in question, so as to increase productivity, nor an operator's careless conduct in using the product without the safety device, however foreseeable that conduct may have been, is, as a matter of law, within the ambit of a manufacturer's responsibility (*Robinson v Reed-Prentice Div., supra*).

Accordingly, Special Term did not err in granting partial summary judgment to Clark to the extent of determining that said defendant had no liability for any claim or cross claim based solely upon the removal of the removable overhead safety guard from the subject forklift.