■ BRIAN LaPAGLIA, an Infant, by His Father and Natural Guardian, VINCENT LaPAGLIA, et al., Respondents, v SEARS ROEBUCK AND COMPANY, INC., et al., Appellants, and JOHN J. RYAN et al., Respondents.—In an action to recover damages for personal injuries, etc., the defendants Sears Roebuck and Company, Inc., and Roper Corporation appeal from (1) a judgment of the Supreme Court, Westchester County (Walsh, J.), entered December 31, 1985, which, upon separate jury verdicts as to liability and damages, is in favor of the plaintiff Brian LaPaglia and against them in the principal sum of $1,950,000 and in favor of plaintiff Vincent LaPaglia and against them in the principal sum of $10,000, and is in favor of the defendants Ryan and against the appellants on their cross claims, and (2) an order of the same court, entered August 10, 1987, which denied their motion to vacate the judgment and for a new trial pursuant to CPLR 5015 (a) (3).

Ordered that the judgment is modified, on the facts and as a matter of discretion, by deleting the provision thereof which awarded Brian LaPaglia $1,950,000, and substituting therefor a provision granting the appellants a new trial with respect to Brian LaPaglia's damages unless Brian LaPaglia shall serve and file in the the office of the Clerk of the Supreme Court, Westchester County, a written stipulation signed by him consenting to decrease the award of damages in his favor from the principal sum of $1,950,000 to the principal sum of $800,000 and to the entry of an amended judgment accordingly; as so modified, the judgment is affirmed, without costs or disbursements; in the event Brian LaPaglia so stipulates, then the judgment, as so reduced and amended, is affirmed, without costs or disbursements; and it is further,

Ordered that Brian LaPaglia's time to serve and file a stipulation is extended until 20 days after service upon him of a copy of this decision and order, with notice of entry; and it is further,

Ordered that the findings of fact as to liability are affirmed; and it is further,

Ordered that the order is affirmed, without costs or disbursements.

In July 1978 as the then nine-year-old plaintiff Brian La-Paglia was watching his nine-year-old friend, the defendant Drew Ryan, mowing the grass in the Ryan backyard, he was struck in the right eye with a small object, ultimately suffering the loss of the eye. At the time of impact, the infant plaintiff was situated approximately 10 feet from the lawnmower's discharge chute from which grass was being ejected in his direction and which was unshielded.

The product in question, a rotary riding lawnmower, was designed and manufactured by the defendant Roper Corporation (hereinafter Roper) for the defendant Sears Roebuck and Company, Inc. (hereinafter Sears), the retailer, under the exclusive Sears trade name "Craftsman". The lawnmower was sold to its original owner with a standard part called a chute deflector, a hinged piece of metal affixed by two screws to the top of the discharge chute, which was designed to direct grass clippings in a downward fashion. Also purchased with the mower was an optional, detachable grass catcher, essentially, a mesh burlap sack. When defendant John Ryan purchased the lawnmower in 1975 or 1976, the chute deflector was absent and the grass bag was in its place. When the bag deteriorated to the point beyond which it was functional, Mr. Ryan disposed of it.

The plaintiffs advanced several theories of liability, *inter alia,* defective design and negligent failure to warn. The design claim was premised on the nature of the chute deflector and its interplay with the grass bag attachment. Specifically, the plaintiff contended that the appellants fully intended the consumer to remove the chute deflector, a safety device, in order to accommodate the bracket upon which hung the grass bag and that such a design was not reasonably safe in light of then existing design alternatives since it should have been anticipated that the mower would be used without the grass bag, which had a much shorter serviceable life than the mower itself. The mower would then become dangerous since, absent either of these two devices, there would be nothing covering the discharge chute opening so as to protect against the well-known hazard of objects being propelled into bystanders.

The failure to warn claim focused on the absence of any warnings from both the owner's manual and the machine itself against operating the mower without either the chute deflector or the grass bag on the discharge chute. The plaintiffs adduced expert testimony with respect to both theories.

The appellants' position, supported by the testimony of the mower's designer, a Roper employee, was that the chute deflector was not a safety guard and therefore, would not have prevented the accident. They further maintained that the deflector need not have been removed in order to install the grass bag bracket. In the appellants' view, the accident had been caused by John Ryan's subsequent modifications to the mower and the negligence of John Ryan and his son Drew.

The jury apportioned liability as between Sears and Roper at 60% and 40% respectively, on both a design defect theory and a negligent failure to warn theory. The defendants John and Drew Ryan were found free of negligence and the infant plaintiff was found not to have been contributorily negligent. The jury awarded Brian LaPaglia the sum of $1,950,000 and $10,000 in stipulated medical expenses to his father.

On appeal, the appellants assert that the jury verdict was against the weight of the credible evidence. Their first challenge focuses on the proof of causation, specifically, that since the object which struck the infant plaintiff was never recovered, the jury was forced to speculate not only as to what struck him, but also with respect to the source of the object. The law is clear that in order to recover against the appellants, the plaintiffs were required to establish, by a preponder-

ance of the credible evidence, that the negligent or defective mower design, or other alleged negligence, "was a substantial cause of the events which produced the injury" *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315, *rearg denied* 52 NY2d 784, 829; *see, Voss v Black & Decker Mfg. Co.,* 59 NY2d 102). Where the evidence adduced reveals the existence of several possible causes of an injury, for one or more of which the defendant is not responsible, a plaintiff cannot recover without proving the injury was sustained wholly or in part by reason of the defendant's negligence *(see, Bernstein v City of New York,* 69 NY2d 1020, 1021-1022). A plaintiff need not, however "refute remote possibilities; it is enough for plaintiff to show facts and conditions from which the negligence of defendant may be reasonably inferred" *(Bernstein v City of New York, supra,* at 1022).

At bar, the evidence established that Brian LaPaglia was struck in the eye by a small object, as evidenced by the nature of his injury, i.e., limited to his eye; that the object, in order to have shattered the eyeball as it did, had to have been propelled at a high rate of speed, which was provided by the rotation of the mower's blade at a speed estimated by the appellants' expert at 200 miles per hour, and that the phenomenon of thrown objects in connection with rotary-power mowers was well recognized.

Moreover, the plaintiffs' expert testified with a reasonable degree of certainty that the source of the object that struck Brian was the discharge chute and that, had the design alternatives described by him been utilized, the accident would not have happened.

Thus, contrary to the appellants' claim that there was a myriad of possibilities presented by the evidence as to the manner in which the injury could have occurred, we find that the jury was entirely justified in concluding that the appellants' acts were a substantial factor in bringing about Brian LaPaglia's injury and that it was not "just as reasonable and probable that the injury was the result of one cause as the other" *(Ingersoll v Liberty Bank,* 278 NY 1, 7).

The appellants further maintain that the modifications effected to their product by the consumer, i.e., the removal of the chute deflector and the failure to use the grass bag in its stead, either of which would have prevented an object from being discharged at an angle sufficient to strike a bystander in the eye, so attenuated their conduct from the ultimate injury to Brian LaPaglia that they constituted superseding causes of

the accident. We disagree. It is settled that a manufacturer of a product may not be held liable either on a negligence or strict products liability cause of action where "[m]aterial alterations at the hands of a third party which work a substantial change in the condition in which the product was sold by destroying the functional utility of a key safety feature" are effected *(Robinson v Reed-Prentice Div.,* 49 NY2d 471, 481) and where these alterations are a proximate cause of a plaintiff's injuries. Where, however, a product is "purposefully manufactured to permit its use without the safety guard" *(Lopez v Precision Papers,* 67 NY2d 871, 873, *affg* 107 AD2d 667), it is for the jury to determine the scope of the product's intended purposes and whether the product was not reasonably safe when placed in the stream of commerce *(Lopez v Precision Papers, supra; McAvoy v Outboard Mar. Corp.,* 134 AD2d 245; *Ayala v V & O Press Co.,* 126 AD2d 229). In this case, credible testimony was elicited not only from users of the product but also from a Roper employee, which established that the lawnmower was designed and manufactured with the specific purpose of permitting, if not requiring, the facile removal of the chute deflector for the purpose of installing the grass bag bracket which fit into the identical holes on the mower. Thus, the jury was warranted in refusing to absolve the appellants of liability for defective design.

Moreover, the jury was entitled to find that had there not been an "inadequacy or absence of warning for the use of the product" *(Robinson v Reed-Prentice Div., supra,* at 478-479), specifically, the absence of a cautionary instruction as to the consequences of operating the mower without either the chute deflector or the grass bag, the product would not have been misused. A manufacturer is under a duty to use reasonable care in designing its product so that it will be safe when "used in the manner for which [it] was intended * * * as well as an unintended yet reasonably foreseeable use" *(Micallef v Miehle Co.,* 39 NY2d 376, 385-386). Where, as here, the use of the mower without either the chute deflector or the grass bag was foreseeable inasmuch as the appellants both intended the removal of one to allow use of the other and, where they were cognizant of the fact that the serviceable life of the grass catcher is shorter than that of the mower, the jury was entitled to find that the appellants breached their duty to warn the consumer of dangers inherent in the use or foreseeable misuse of the product of which it knew or should have known and which were not obvious or known to the user *(see, Miller v Anetsberger Bros.,* 124 AD2d 1057, 1059, 1060, *appeal*

*dismissed* 124 AD2d 1074; 1 Weinberger, New York Products Liability § 23.10; PJI 2:141.2 [1988 Cum Supp]).

Nor do we view as persuasive the appellants' argument that even had they warned against operation of the mower without its safety components, John Ryan would have nevertheless ignored the caution, as he did certain of the instructions in the owner's manual, and that, consequently, the negligent failure to warn was not a proximate cause of the accident. It is clear that a manufacturer will be absolved of liability for failure to warn for lack of causation where the consumer was already aware of the danger *(see, Smith v Stark,* 67 NY2d 693) or additional warnings would not have prevented the incident *(see, Torrogrossa v Towmotor Co.,* 44 NY2d 709). The jury was, however, warranted in rejecting this claim. While John Ryan testified that he believed, at the time of trial, that operating the mower was safer with the chute deflector or grass bag on, this statement is not, as the appellants argue, susceptible of the interpretation, as a matter of law, that Mr. Ryan was aware of the dangers posed at the time of the accident seven years earlier. Moreover, it cannot be assumed from Mr. Ryan's failure to have heeded certain of the warnings contained in the owner's manual, that he would have similarly ignored a prominent warning on the machine itself. Clearly, the jury was entitled to find that in light of the contrast between the nature of the warnings provided and those negligently omitted, the consumer likely would have heeded the latter, prominently displayed, ever-present cautionary instructions *(see, Billiar v Minnesota Min. & Mfg. Co.,* 623 F2d 240, 247).

We do, however, agree with the appellants' claim that the award of $1,950,000 to Brian LaPaglia for his past and future pain and suffering is excessive and disproportionate to the injury sustained. While, as Brian LaPaglia's treating physician explained, the loss of an eye at the tender age of nine years is undoubtedly physically and emotionally traumatic and impacts greatly upon the child's development, the record reveals that Brian has adjusted remarkably well to his injury. Under the circumstances, an award of $800,000 is appropriate *(see, Simon v Sears, Roebuck & Co.,* 124 AD2d 655; *Alferoff v Casagrande,* 122 AD2d 183).

We do not view the trial court's denial of the appellants' motion, made 17 months after entry of judgment, to vacate the judgment and for a new trial predicated on the "fraud, misrepresentation, or other misconduct" of the plaintiffs (CPLR 5015 [a] [3]) as an improvident exercise of discretion. While the evidence which forms the basis for the motion tends

to cast some doubt on the plaintiffs' claim regarding the effect of the injury on the child's life, the Trial Judge was not persuaded that the alleged "perjury so infected the verdict as to require that the verdict be set aside in the interest of justice" *(Trapp v American Trading & Prod. Corp.,* 66 AD2d 515, 519), nor are we *(see,* Siegel, NY Prac § 429).

We have examined the appellants' remaining contentions challenging the validity of the jury verdict absolving the defendants Ryan of negligence, the sufficiency of the jury charge and the propriety of the plaintiffs' counsel's statements to the jury, and find them to be without merit. Mangano, J. P., Brown, Kunzeman and Weinstein, JJ., concur.