■ JOSE AVILES et al., Respondents, v EAGLE PICHER CORP. et

al., Appellants, et al., Defendants. (And a Third-Party Action.) —In an action to recover damages for personal injuries, etc., the defendants Eagle Picher Corp. and Union Steel Products appeal from an order of the Supreme Court, Kings County (Golden, J.), dated October 29, 1988, which denied their motion for summary judgment dismissing the complaint and all cross claims against them.

Ordered that the order is reversed, on the law, with costs, the motion is granted, the complaint and all cross claims are dismissed insofar as they are asserted against the defendants Eagle Picher Corp. and Union Steel Products, and the action against the remaining defendants is severed.

The plaintiff, an employee of Pechter Baking Co. (hereinafter Pechter), suffered the amputation of several fingers in the course of his employment, when they became caught in a chain and sprocket assembly of a bread conveyor manufactured by the defendant Union Steel Products (hereinafter Union Steel), which was dissolved in 1970. The defendant Eagle Picher Corp. (hereinafter Eagle) is the successor corporation to Union Steel. The record reveals that at the time of its purchase in 1950, the conveyor was equipped with safety guards covering the multiple chain and sprocket assemblies that drove the conveyor belt. At no time could the conveyor have been operated without the chain safety guard on each and every sprocket, and without the chain assembly being in the closed position. In addition, on each sheet metal guard the manufacturer had attached a warning label which stated, in substance, that the conveyor should not be operated unless the safety guards were in a closed position covering the chain and sprocket assemblies.

Sometime during the early 1970's, however, Pechter employees replaced all of the alternating current motors and chain and sprocket assemblies in order to convert the variable-speed conveyor into a single-speed direct current motor system. The new system neither retained the old safety guards nor installed any new safety guards over the new chain and sprocket assemblies.

The plaintiffs alleged that the subject conveyor was dangerous and defective inasmuch as it was not equipped with proper and adequate safety guards or warnings and instructions. The defendants Union Steel and Eagle moved for summary judgment, asserting that under the holding of *Robinson v Reed-Prentice Div.* (49 NY2d 471) they could not be held liable for an injury resulting from a substantial modification

made by a third party which rendered the product defective. In opposition to the motion, the plaintiffs asserted, *inter alia,* that numerous questions of fact existed as to whether the manufacturer breached its duty by placing on the market a product which had a defect that causes injury, and by failing to adequately warn. The Supreme Court denied summary judgment and Eagle and Union Steel now appeal. We conclude that the appellants' motion should have been granted and, accordingly, we reverse the order appealed from.

It is well settled that a manufacturer of a product may not be held liable, whether on a negligence or strict products liability cause of action, where "[m]aterial alterations at the hands of a third party [are made] which work a substantial change in the condition in which the product was sold by destroying the functional utility of a key safety feature" *(Robinson v Reed Prentice Div.,* 49 NY2d 471, 481, *supra; see, Sage v Fairchild-Swearingen Corp.,* 70 NY2d 579), and where these alterations are a proximate cause of a plaintiff's injuries *(see, LaPaglia v Sears Roebuck & Co.,* 143 AD2d 173, 177). The plaintiffs' attempt to invoke the exception to the subsequent modification defense, i.e., that a manufacturer may be held liable under a design defect theory where the product is purposefully manufactured so as to permit its use without a certain safety feature which was designed to be removable *(see, Lopez v Precision Papers,* 107 AD2d 667, *affd* 67 NY2d 871; *Darsan v Guncalito Corp.,* 153 AD2d 868, 870), is unpersuasive. The uncontroverted evidence was that the conveyor was equipped with safety guards, which had been completely removed to permit conversion of the variable-speed conveyor system to a single-speed operation. In light of the design of the original conveyor, whereby the safety guard was permanently affixed to the motors of the conveyor which were subsequently replaced, it is manifest that the product was not "purposefully manufactured to permit its use without the safety guard" *(Lopez v Precision Papers,* 67 NY2d 871, 873, *supra).*

We further find that Pechter's substantial modifications of the conveyor system negated any responsibility on the part of the manufacturer or its successor to provide additional warnings or to equip the machine with the safety devices suggested by the plaintiffs, particularly where the safety devices and warnings which they provided on the conveyor in 1950 had been removed by the injured plaintiff's employer *(see, Silverstein v Walsh Press & Die Co.,* 119 AD2d 658, 660; *see also, Clifford v Black Clawson Co.,* 145 AD2d 808, 811). Thompson, J. P., Brown, Kunzeman and Eiber, JJ., concur.