**Luis LIRIANO, Plaintiff–Appellee,**

v.

**HOBART CORPORATION, Defendant–Third Party Plaintiff–Appellant,**

**616 Melrose Meat Corporation, s/h/a Super Associated, Third–Party–Defendant–Appellant.**

**Nos. 683, 709, Docket 96–9641, 97–7449.**

United States Court of Appeals, Second Circuit.

Argued Oct. 20, 1997.

Decided Jan. 2, 1998.

Steven B. Prystowsky, Lester Schwab Katz & Dwyer, New York City, (Robert D. Monnin, Saul Wilensky, of counsel) (Thompson Hine & Flory, L.L.P., Cleveland, OH, of counsel), for Defendant–Third Party Plaintiff–Appellant.

William M. Kimball, New York,City (James P. O'Connor, of counsel), for Third–Party–Defendant–Appellant.

Abby J. Resnick, Trolman Glaser & Lichtman, New York City, (Brian J. Isaac, of counsel), for Plaintiff–Appellee.

Before: NEWMAN, CALABRESI, CUDAHY,* Circuit Judges.

CALABRESI, Circuit Judge.

I. BACKGROUND

Luis Liriano, a seventeen-year-old employee in the meat department at Super Associated grocery store ("Super"), was injured on the job in September 1993 when he was feeding meat into a commercial meat grinder whose safety guard had been removed. His hand was caught in the "worm" that grinds the meat; as a result, his right hand and lower forearm were amputated.

The meat grinder was manufactured and sold in 1961 by Hobart Corporation ("Hobart"). At the time of the sale, it had an affixed safety guard that prevented the user's hands from coming into contact with the feeding tube and the grinding "worm." No warnings were placed on the machine or otherwise given to indicate that it was dangerous to operate the machine without the safety guard in place. Subsequently, Hobart became aware that a significant number of purchasers of its meat grinders had removed the safety guards. And in 1962, Hobart began issuing warnings on its meat grinders concerning removal of the safety guard.

There is no dispute that, when Super acquired the grinder, the safety guard was intact. It is also not contested that, at the time of Liriano's accident, the safety guard had been removed. There is likewise no doubt that Hobart actually knew, before the accident, that removals of this sort were occurring and that use of the machine without the safety guard was highly dangerous. And Super does not question that the removal of the guard took place while the grinder was in its possession.

Liriano sued Hobart under theories of negligence and strict products liability for, *inter alia,* defective product design and failure to warn. He brought his claims in the Supreme Court, Bronx County, New York. Hobart removed the case to the United States District Court for the Southern District of New York, and also impleaded Super as a third-party defendant, seeking indemnification and/or contribution. The District Court (Shira A. Scheindlin, *Judge* ) dismissed all of Liriano's claims except those based on failure to warn.

Following trial, the jury concluded that the manufacturer's failure to warn was the proximate cause of Liriano's injuries and appor-

* The Honorable Richard D. Cudahy, Circuit Judge of the United States Court of Appeals for the      Seventh Circuit, sitting by designation.

tioned liability 5% to Hobart and 95% to Super. On partial retrial, limited to the extent of Liriano's responsibility, the jury assigned him 33 1/3% of the responsibility. On appeal, Hobart and Super argue, *inter alia,* that the question of whether Hobart had a duty to warn Liriano should have been decided in their favor by the court, as a matter of law. It is this question that gives rise to the current certification.

## II. DISCUSSION

### A. Applicable New York Law

It is well-settled under New York law that a manufacturer is under a duty to use reasonable care in designing its product so that it will be safe when "used in the manner for which the product was intended, as well as unintended yet reasonably foreseeable use." *Micallef v. Miehle Co.,* 39 N.Y.2d 376, 385–86, 348 N.E.2d 571, 577, 384 N.Y.S.2d 115, 121 (1976) (citations omitted). It is equally well-settled in New York that manufacturers have a duty to warn users of foreseeable dangers inherent in their products. *See Rastelli v. Goodyear Tire & Rubber Co.,* 79 N.Y.2d 289, 297, 591 N.E.2d 222, 225, 582 N.Y.S.2d 373, 376 (1992); *McLaughlin v. Mine Safety Appliances Co.,* 11 N.Y.2d 62, 68, 181 N.E.2d 430, 433, 226 N.Y.S.2d 407, 411 (1962); *Bukowski v. CooperVision Inc.,* 185 A.D.2d 31, 33, 592 N.Y.S.2d 807, 808 (3d Dep't 1993).

In *Robinson v. Reed–Prentice Division,* 49 N.Y.2d 471, 403 N.E.2d 440, 426 N.Y.S.2d 717 (1980), the New York Court of Appeals in effect removed a set of product liability cases from the *Micallef* analysis of "intended" and "reasonably foreseeable use." The *Robinson* case itself involved a machine designed with a safety shield that could not be kept in an open (unprotecting) position due to a sophisticated interlock system. This interlock was designed to prevent the machine from operating unless its safety shield was in a closed

(protecting) position. *See id.* at 476–77, 403 N.E.2d at 441–42, 426 N.Y.S.2d at 718–19. The plaintiff's employer, however, cut holes in the safety shield so that the machine would still operate (without the protections of the safety shield). *See id.* at 477, 403 N.E.2d at 442, 426 N.Y.S.2d at 719. In other words, the employer bypassed the safety devices of the shield and the interlocking safety system.

The New York Court of Appeals held that a manufacturer of a product may not be held liable "either on a strict products liability or negligence cause of action, where, after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of plaintiff's injuries." *Id.* at 475, 403 N.E.2d at 441, 426 N.Y.S.2d at 718. "Material alterations at the hands of a third party which work a substantial change in the condition in which the product was sold by destroying the functional utility of a key safety feature, however foreseeable that modification may have been, are not within the ambit of a manufacturer's responsibility." *Id.* at 481, 403 N.E.2d at 444, 426 N.Y.S.2d at 721.[1]

*Robinson,* though never overruled, has not been left undisturbed. Thus in *Cover v. Cohen,* 61 N.Y.2d 261, 461 N.E.2d 864, 473 N.Y.S.2d 378 (1984), decided four years after *Robinson,* the Court of Appeals not only reaffirmed a manufacturer's duty to warn purchasers of dangers in the product, but clearly held that this duty on the part of the manufacturer to warn can continue even after the original sale:

A manufacturer ... may, however, incur liability for failing to warn concerning dangers in the use of a product which come to his attention after manufacture or sale, through advancements in the state of the art, with which he is expected to stay abreast, or through *being made aware of later accidents involving dangers in the*

---

1. Indeed, in *Robinson,* the evidence established that the manufacturer "knew, or should have known, that the particular safety gate designed for the machine made it impossible" for the purchaser-employer to use the machine to produce its product. *See Robinson,* 49 N.Y.2d at 477, 403 N.E.2d at 442, 426 N.Y.S.2d at 719. In rejecting the foreseeability standard, however, the Court of Appeals stated that to hold otherwise "would expand the scope of a manufacturer's duty beyond all reasonable bounds and would be tantamount to imposing absolute liability on manufacturers for all product-related injuries." *Id.* at 481, 403 N.E.2d at 444, 426 N.Y.S.2d at 721 (citation omitted).

*product of which warning should be given to users.*

*Id.* at 274–75, 473 N.Y.S.2d 378, 461 N.E.2d 864, 461 N.E.2d at 871, 473 N.Y.S.2d at 385 (citations omitted) (emphasis added).[2]

Six years after *Robinson,* moreover, the Court of Appeals qualified *Robinson* in another way and declined to hold that all disablements of safety devices constitute subsequent modifications precluding a manufacturer's liability. In *Lopez v. Precision Papers, Inc.,* 67 N.Y.2d 871, 492 N.E.2d 1214, 501 N.Y.S.2d 798 (1986), the court held that a disablement does not necessarily foreclose liability where safeguards can be easily removed and where such removal thereby increases the efficacy of the product. The plaintiff in *Lopez,* a forklift operator, was severely injured when a large roll of paper fell from a wooden pallet on the machine he was operating and hit him on the head. The plaintiff sued the forklift manufacturer, alleging certain design defects, including an easily removable overhead guard. *See Lopez v. Precision Papers, Inc.,* 107 A.D.2d 667, 667–68, 484 N.Y.S.2d 585, 586–87 (2d Dep't 1985), *aff'd,* 67 N.Y.2d 871, 492 N.E.2d 1214, 501 N.Y.S.2d 798 (1986). The trial court granted partial summary judgment to the manufacturer, reasoning that "a manufacturer may not be held liable for the negligent alteration of the product by a user, even if the alteration is foreseeable." *Id.* at 668, 484 N.Y.S.2d at 587.

The Appellate Division reversed,[3] holding that *Robinson,* "the case relied upon by Special Term, does not, as a matter of law, bar plaintiffs' claim." *Id. Robinson,* the court said, was a case in which "the modification was so substantial that it permanently destroyed the functional utility of a safety gate." *Id.* at 669, 484 N.Y.S.2d at 587. In *Lopez,* instead, the safety device was easily removed and the removal made the product more functional. *See id.*[4] Under the circumstances, the court held, a jury could decide "the forklift's intended purposes." *Id.* at 669, 484 N.Y.S.2d at 587–88. In other words, if the jury found that removability of the safety guard was part of the forklift's design, then the guard's removal did not constitute a subsequent modification of the product.

The Court of Appeals affirmed the Appellate Division. It held that a manufacturer may, under some circumstances, be liable under a design defect theory even though the removal of a safety feature proximately caused the injury. But in order to hold a defendant-manufacturer liable for injuries under *Lopez* on such a theory, a plaintiff has to prove that the product "was purposefully manufactured to permit its use without the safety guard." *Lopez,* 67 N.Y.2d at 873, 492 N.E.2d at 1215, 501 N.Y.S.2d at 799.

2. The court in *Cover* explained that because "[t]he nature of the warning to be given and to whom it should be given . . . turn upon a number of factors, . . . [g]enerally, the issue will be one of fact for the jury." *Cover,* 61 N.Y.2d at 276, 461 N.E.2d at 872, 473 N.Y.S.2d at 386.

3. More precisely, the Supreme Court, Kings County, had granted partial summary judgment to the defendant-manufacturer for all claims "based solely upon the removal of the removable overhead safety guard." *See Lopez,* 107 A.D.2d at 667, 484 N.Y.S.2d at 586. The Appellate Division modified this order by deleting the provisions granting the defendant-manufacturer's motion for summary judgment in part and substituting for them a provision denying the summary judgment motion in toto. By so doing, the Appellate Division in effect reversed the trial court's grant of summary judgment. It then "affirmed" the modified order, thereby allowing the plaintiff to proceed to trial. *See id.*

4. According to one description of the facts in *Lopez,* "[t]he overhead guard was bolted to the forklift but could be lifted off of the forklift after it was unbolted." Brief for Plaintiff–Respondent at 21, *Wyda v. Makita Elec. Works, Ltd.,* 232 A.D.2d 407, 648 N.Y.S.2d 154 (2d Dep't 1996) (No. 95–08497). This description finds support in the *Lopez* state court record on appeal to the Appellate Division. In its brief, the manufacturer of the forklift claims to have designed its product with a "bolt-removable overhead protector." Brief for Defendant–Respondent–Appellant at 14, *Lopez,* 107 A.D.2d 667, 484 N.Y.S.2d 585. The injured employee similarly asserts that "[t]he procedure to remove the guard was quite simple, to wit: unscrewing several bolts." Brief for Plaintiffs–Appellants at 3, *Lopez,* 107 A.D.2d 667, 484 N.Y.S.2d 585. The trial court in *Lopez* stated only that the removable overhead safety guard was "not welded." Appendix to Brief for Defendant–Respondent–Appellant at 24, *Lopez,* 107 A.D.2d 667, 484 N.Y.S.2d 585.

## B. Unsettled Issues of Law

The further articulation of *Cover* and *Lopez* has, we think, left the law uncertain in various respects. Of particular moment to the case before us, the law appears to be unclear on whether a manufacturer may be liable for failure to warn of dangers associated with foreseeable and/or known misuses of a product, where the product has been substantially modified by a third party's removal of the product's safety devices (*i.e.*, in situations in which no liability for design defect would exist).[5]

The Court of Appeals has not addressed the circumstances under which a manufacturer may be liable for not warning against known or reasonably foreseeable misuse resulting in a dangerous product alteration. While *Robinson* squarely holds that a manufacturer may not be liable—in strict products liability or negligence—on a *design defect* claim for injuries caused in part by alteration or modification of a safety device, the question remains whether a manufacturer who knew of or should have foreseen the removal or modification is liable under either negligence or strict products liability for *failure to warn* of the dangers of misusing the product following such modification.[6]

The dissent in *Robinson* implied that the substantial modification defense created by the majority barred not only a manufacturer's liability for defective design, but also, *sub silentio*, its liability for negligent failure to warn. The dissent stated that "[t]he majority opinion appears to proceed on the assumption that the plaintiff's suit was based essentially on a strict products liability theory alone." *Robinson*, 49 N.Y.2d at 481, 403 N.E.2d at 444, 426 N.Y.S.2d at 722 (Fuchsberg, *J.*, dissenting). But, since the plaintiff, in his complaint, had also raised the issue of negligent failure to warn, and, under normal standards of negligence, the risk of injury due to lack of warning was foreseeable (because the manufacturer knew that the safety gates were being altered by the employer),

---

5. It can also be argued that the New York courts have not resolved the question of what degree of ease of removal of a safety device, together with a manufacturer's knowledge of that ease, allow a finding, pursuant to *Lopez*, that the product was designed to permit the removal, and hence that no substantial modification occurred. Furthermore, the role of court and jury in making such a finding could be viewed as less than pellucid. Several intermediate court opinions have held that, when a bolted safety device has been removed, a jury may not find that the product was designed to permit the removal of the device. *See, e.g., Zuniga v. Schmidt & Assocs.*, 208 A.D.2d 719, 720, 617 N.Y.S.2d 502, 503 (2d Dep't 1994) (affirming a grant of summary judgment against the plaintiff's claim of design defect, in view of the fact that the removal of the safety guard would have required the loosening of seventeen bolts using four separate wrench procedures); *Darsan v. Guncalito Corp.*, 153 A.D.2d 868, 870, 545 N.Y.S.2d 594, 596 (2d Dep't 1989) ("In view of the design of the grinder, specifically, that the safety guard was affixed to the machine with three fairly heavy rivets which would have to be removed forcibly ... it is manifest that the product was not 'purposefully manufactured to permit its use without the safety guard.' "). And yet, in *Lopez*, both the Appellate Division and the Court of Appeals allowed a jury to find that the forklift was designed to permit removal of the safety device, notwithstanding the fact that it was apparently bolted to the forklift. *See supra* note 4.

When *Lopez* does apply, however, it seems clear that both an action for design defect and an action for failure to warn lie. And this is, of course, so regardless of whether or not the substantial modification defense bars plaintiffs in failure to warn cases. Thus, in *LaPaglia v. Sears Roebuck & Co.*, 143 A.D.2d 173, 531 N.Y.S.2d 623 (2d Dep't 1988), the Second Department, after upholding a jury finding that the lawnmower was designed and manufactured to allow the easy removal of the chute deflector in order to install the grass catcher, also upheld a jury determination that the defendant-manufacturer was liable for its failure to provide a "cautionary instruction as to the consequences of operating the mower without either the chute deflector or the grass bag," and stated that "the jury was entitled to find that the appellants breached their duty to warn." *Id.* at 177, 531 N.Y.S.2d at 627.

In the case at hand, however, because the jury was not expressly asked to consider the ease of removal of the safety device as part of its determination of "whether it was reasonably foreseeable that plaintiff would use the machine without a guard," these issues seem not to be before us. Our mention of *Lopez*, therefore, is solely to indicate the various ways in which *Robinson* has been limited by the New York courts.

6. When addressing negligence, the *Robinson* majority cabined its analysis to the design defect claim. *See Robinson*, 49 N.Y.2d at 480, 403 N.E.2d at 444, 426 N.Y.S.2d at 721 ("Nor does the record disclose any basis for a finding of negligence on the part of [the manufacturer] *in the design of the machine*.") (emphasis added).

the dissent asserted that the failure to permit recovery must implicitly have meant that the defendant was under no duty to warn. *See id.* at 484–87, 426 N.Y.S.2d 717, 403 N.E.2d 440, 403 N.E.2d at 446–48, 426 N.Y.S.2d at 724–25 (Fuchsberg, *J.,* dissenting).

Some lower federal court and New York appellate division cases have adopted this reading of *Robinson. See, e.g., Kromer v. Beazer East, Inc.,* 826 F.Supp. 78, 81 (W.D.N.Y.1993) (finding that "[t]he disabling of the safety interlock switch by tying it up with a rag or a piece of string is, as a matter of law, a substantial alteration of the [product]" that precludes plaintiff's design defect and failure to warn claims); *Ernest v. S.M.S. Eng'g Inc.,* 223 A.D.2d 801, 803, 635 N.Y.S.2d 799, 801 (3d Dep't 1996) (holding that, because machine was substantially modified after it was delivered, plaintiff's claims were foreclosed under theories of design defect and inadequate warnings); *Frey v. Rockford Safety Equip. Co.,* 154 A.D.2d 899, 899, 546 N.Y.S.2d 54, 55 (4th Dep't 1989) (affirming a grant of summary judgment in a case in which the plaintiff's injury followed her employer's installation of a switch allowing a punch press to be operated without its safety device, "whether [the] plaintiff seeks to hold defendants liable for an alleged product defect or for an alleged failure to warn").[7]

Other New York appellate division cases, however, hold that the subsequent modification defense does not preclude liability where a plaintiff establishes that the manufacturer failed to warn of the dangers of using the machinery without the safety guard in place.[8] Thus, in *Darsan v. Guncalito Corp.,* 153 A.D.2d 868, 545 N.Y.S.2d 594 (2d Dep't 1989), a meat wrapper employee suffered the amputation of his right hand, wrist, and forearm while he was operating a meat grinder. At the time of the machine's purchase, it was equipped with a safety guard over the feed pan; subsequently, the safety guard was removed by another employee. *See id.* at 869, 545 N.Y.S.2d at 595. The court ruled that the substantial modification defense of *Robinson* applied to the plaintiff's design defect claim, but:

> [t]o the extent the plaintiffs' action against the manufacturer is based on the theory that the machine was defective by virtue of the failure to display with sufficient prominence warnings of the danger of using the grinder without the safety guard in place, however, the complaint must be sustained. A manufacturer has a duty to warn of dangers associated with the reasonably foreseeable misuse of its product.

*Id.* at 870, 545 N.Y.S.2d at 596 (citations omitted).[9]

**7.** See also *Bonilla v. Schjeldahl, Inc.,* 662 N.Y.S.2d 782, 783 (2d Dep't 1997), which held that the *Robinson* subsequent modification defense "applies whether the plaintiff seeks to hold the defendants liable for an alleged product defect or for an alleged failure to warn." After stating this, however, the court added:

> [I]t was not practicable to provide instructions as to how to put the candy switch onto a machine, since there were too many possible ways to install the switch. Therefore, we find that the plaintiff's hand injury also was not proximately caused by any failure to warn on the part of [the manufacturer].

*Id.* at 784. It is curious, to say the least, that the court would make this remark if it meant to say that subsequent modifications, as a matter of law, foreclosed liability for failure to warn.

**8.** Moreover, in *Amatulli v. Delhi Construction Corp.,* 77 N.Y.2d 525, 571 N.E.2d 645, 569 N.Y.S.2d 337 (1991)—a case in which the New York Court of Appeals held (relying on *Robinson* ) that a manufacturer of an above-ground swimming pool was not liable for injuries to the plaintiff because the pool had been "trans-formed" when it was installed partially underground—the Court of Appeals seemed to acknowledge that liability could have attached had sufficient evidence been presented of the manufacturer's knowledge that its pools were being dangerously and improperly installed underground. *See id.* at 533, 571 N.E.2d at 649, 569 N.Y.S.2d at 341.

**9.** Subsequently, the Second Department affirmed the trial court's decision to set aside a jury verdict for the plaintiff, despite the fact that it "had previously found issues of fact to exist with regard to whether or not it was reasonably foreseeable that the meatgrinding machine would be misused as it was here, with the safety guard removed." *Darsan v. Globe Slicing Machine Co.,* 200 A.D.2d 551, 553, 606 N.Y.S.2d 317, 318 (2d Dep't 1994). It did this because the owner and purchaser of the meat grinder *had thrown away the warning cards that came with the machine,* and on these facts, the court explained, "it was not foreseeable that the purchaser would discard the warnings, and fail to warn the user of the danger created by grinding off the rivets and removing the safety guard." *Id.*

And in *Miller v. Anetsberger Bros.*, 124 A.D.2d 1057, 508 N.Y.S.2d 954 (4th Dep't 1986), the court likewise distinguished a failure to warn claim from a design defect claim in the context of the substantial modification defense. In *Miller*, the plaintiff's finger was injured when it was pulled between a set of rollers of a pizza dough roller machine that had three panels that were removable to permit access to the rollers during cleaning. *See id.* at 1058, 508 N.Y.S.2d at 955. The court reviewed a trial verdict in which:

[t]he court [had] instructed the jury on two theories of strict products liability; defective design and failure to warn. Concerning the disabling of the safety switch, the court charged that if the jury found that employees had intentionally disabled the safety switch, it would have to find that the machine was not defective in design; but that in deciding whether the manufacturer was liable for failure to warn, it could take into consideration, among other things, the testimony as to the convenience afforded by cleaning the machine while it was operating, knowledge the manufacturer may have had that users of the machine had cleaned it while it was operating, and the "ease of disability of that (safety) switch."

*Id.*

So instructed, the jury found that the product was not defectively designed. But it nonetheless concluded that the manufacturer had failed to warn users of the dangers involved in cleaning the machined while it was operating. *See id.* In upholding the jury verdict, the Second Department stated:

unlike ... *Robinson*, the issue involved is not whether the product was defectively designed, but whether the manufacturer had a duty to warn. Although a manufacturer is under no duty to design a product so that its safety devices may not be disabled, it may, under certain circumstances, be liable for a failure to warn of the conse-

quences of using the machine when the safety devices are inoperative.

*Id.* at 1059, 508 N.Y.S.2d at 956 (citation omitted).

The *Miller* court then said:

Under the circumstances of this case, including the ease of avoiding the safety interlock, the knowledge that the manufacturer had that users were cleaning the rollers with the machine operating, and the convenience of doing so, the jury was entitled to find that defendant had a duty to warn plaintiff, a user of the machine, of dangers inherent in its use or foreseeable misuse of which it knew or should have known and were not obvious or known to plaintiff.

*Id.* (citations omitted).

Finally, in *Smith v. Royce W. Day Co.*, 661 N.Y.S.2d 101 (3d Dep't 1997), the plaintiff was injured while operating a forklift that was designed to be used either as a conventional forklift truck or as an order picker truck for elevated work. When used as an order picker truck, the operator controlled the truck from a platform (outside of the cab), which was latched to the truck. The plaintiff was using the truck in this manner, but with a different platform than that designed by the manufacturer of the forklift, and one that lacked the safety features of the manufacturer's platform. This platform somehow fell off the truck, causing serious injuries to the plaintiff. *See id.* at 102. The plaintiff sued the manufacturer and seller of the forklift, alleging defective design and failure to warn.[10]

The Appellate Division affirmed the trial court's denial of summary judgment, and in doing so expressly addressed the failure to warn claim. It held: "Inasmuch as there were no explicit warnings on the forklift that it was not to be used without the [original manufacturer's] platform ... we agree with the Supreme Court that the adequacy of the warnings is a question of fact for the jury." *Id.* at 103 (citation omitted).[11]

---

10. The plaintiffs did not expressly allege failure to warn in their complaint. But since this claim was included in their bill of particulars, both the trial court and the Appellate Division addressed it. *See Smith,* 661 N.Y.S.2d at 103.

11. The court also, separately, affirmed the denial of summary judgment on the design defect claim. It based this part of its decision on the *Lopez* limitation on *Robinson. See Smith,* 661 N.Y.S.2d at 103.

Cases such as these—which, when a product has been substantially modified by a third party, distinguish between a failure to warn claim and a product design defect allegation—also squarely hold that it is up to the jury to decide whether the manufacturer, in fact, has a duty to warn. *See Miller,* 124 A.D.2d at 1059, 508 N.Y.S.2d at 956 ("[T]he jury was entitled to find that defendant had a duty to warn the plaintiff ...."); *see also Smith,* 661 N.Y.S.2d at 102 ("the adequacy of the warnings is a question of fact for the jury").

Given these cases, at least four possible views of New York law present themselves: Whenever a substantial modification has occurred, *Robinson:* (1) bars claims both for design defect and failure to warn, regardless of whether negligence and/or strict products liability is alleged; (2) bars all actions for design defect, whether based on strict liability or negligence, but does not foreclose suits for failure to warn, whether based on strict

liability or negligence; (3) bars all actions for design defect, and also bars *strict liability* actions for failure to warn, but does not preclude claims based on *negligent* failure to warn; (4) bars only *strict liability* claims (whether for design defect or failure to warn) and forecloses neither category of suit when *negligence* is alleged and proved.

There is a logic to each of these possibilities under *Robinson,* and all but the last find support in New York cases subsequent to *Robinson.* The last, which distinguishes between liability for negligence and strict products liability, seems negated by *Robinson,* and yet is perhaps the most consistent of all with *Robinson*'s peroration which stated that its holding was crucial since any other decision "would be tantamount to imposing absolute liability on manufacturers for all product-related injuries." *Robinson,* 49 N.Y.2d at 481, 403 N.E.2d at 444, 426 N.Y.S.2d at 721.[12]

12. The same peroration would also support the third possibility (barring *strict liability* actions for failure to warn but permitting such actions when based on *negligence*). Unlike the fourth possibility, however, the third would require no further restriction on *Robinson,* since, as discussed *supra* note 6, the negligence analysis in *Robinson* was limited to its discussion of design defect.

Moreover, a reason does appear to exist in tort theory for treating negligence and strict liability similarly when dealing with design defects, but differently in failure to warn cases. One definition of a defective product is based on the so-called risk-utility test. *See* RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 2 cmt. a (Proposed Final Draft Apr. 1, 1997). (This ground for design defect liability applies in New York. *See Denny v. Ford Motor Co.,* 87 N.Y.2d 248, 257, 662 N.E.2d 730, 735, 639 N.Y.S.2d 250, 255 (1995). The other definition—which also applies in New York—is the implied warranty/consumer expectations basis. *See id.* at 258–59, 662 N.E.2d at 736, 639 N.Y.S.2d at 256.)

The risk-utility test involves the making of a cost-benefit analysis to gauge the benefits of a product in relation to its dangers. In this respect, it is very similar to the Learned Hand cost-benefit analysis undertaken to determine whether negligence exists, *see United States v. Carroll Towing Co.,* 159 F.2d 169, 173 (2d Cir.1947). The difference—and it is a significant one—is that under negligence analysis, the cost-benefit test is made on the basis of what the defendant knew or ought to have known at the time he acted, while on the no-fault, risk-utility test, the analysis relies on the knowledge that is available at the time of trial (*i.e.,* it includes data that has

become available even after the accident). Despite this difference, both tests involve a similar weighing of advantages and disadvantages associated with the product. *Cf. Denny,* 87 N.Y.2d at 257, 662 N.E.2d at 735, 639 N.Y.S.2d at 255 ("The adoption of th[e] risk/utility balance as a component of the 'defectiveness' element has brought the inquiry in [strict products liability] design defect cases closer to that used in traditional negligence cases, where the reasonableness of an actor's conduct is considered in light of a number of situational and policy-driven factors.").

While strict liability is also available for failure to warn, *see Lancaster Silo & Block Co. v. Northern Propane Gas Co.,* 75 A.D.2d 55, 61–62, 427 N.Y.S.2d 1009, 1013 (4th Dep't 1980), substantial authority exists for not basing such strict liability on the risk-utility test, *see Freund v. Cellofilm Properties, Inc.,* 87 N.J. 229, 432 A.2d 925, 929 & 930 n. 1 (1981) (citing "[a] growing trend of cases and authority ... [that] has perceived a difference between the utilization of strict liability [based on the risk-utility test], as opposed to negligence, in the inadequate warning area"). The argument is that ex post, it would almost always have been worthwhile to have warned a particular user of the danger that in fact came about, and hence, there would almost always be an actionable failure to warn under the risk-utility test. Yet such ex post analysis usually gives no indication of what warnings would be appropriate in the future. And unless it does so, failure to warn strict liability must be based on other grounds. But these other grounds—essentially implied warranty or consumer expectations—amount to another way of saying that the

We welcome enlightenment on which of these, or other possibilities,[13] is the law of New York today.

## III. CERTIFICATION

■ Certification is particularly appropriate when the state's highest court has cast doubt on the scope or continued validity of one of its earlier holdings, or when there is some law in the intermediate state courts, but no definitive holding by the state's highest tribunal. *See McCarthy v. Olin Corp.*, 119 F.3d 148, 157, 158 n. 1 (2d Cir.1997) (Calabresi, *J.*, dissenting) (citing Arthur L. Corbin, *The Common Law of the United States*, 47 YALE L.J. 1351, 1352 (1938); Harry Shulman, *The Demise of* Swift v. Tyson, 47 YALE L.J. 1336, 1350 (1938)).[14] Absent certification, the danger in both situations—as Professors Corbin and Shulman foresaw—is that a party favored by the lower court decisions or by the weakened high court holding will seek federal jurisdiction with the knowledge that the federal courts, unlike the state's highest court, will feel virtually bound to follow these decisions. As Professor Corbin put it, federal judges will be "limited in a way in which the [state] judges are not themselves limited." Arthur L. Corbin, *The Common Law of the United States*, 47 YALE L.J. 1351, 1352 (1938); *see also* Harry Shulman, *The Demise of* Swift v. Tyson, 47 YALE L.J. 1336, 1350 (1938).

In fact, the case before us presents even stronger arguments for certification. For there are at least two divergent views of the law to be found in the intermediate New York courts on whether a negligent failure to warn claim can survive where liability based upon a design defect claim is precluded. And the New York Court of Appeals has not spoken definitively on the matter.

■ Accordingly, we certify the following question to the New York Court of Appeals:

Can manufacturer liability exist under a failure to warn theory in cases in which the substantial modification defense would preclude liability under a design defect theory, and if so, is such manufacturer liability barred as a matter of law on the facts of this case, viewed in the light most favorable to the plaintiff?

It is hereby ordered that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of the briefs, appendix, and record filed in this Court by the parties. The parties are directed to bear equally such fees and costs as may be directed by the New York Court of Appeals.

This panel retains jurisdiction so that after we receive a response from the New York Court of Appeals we may dispose of various

---

product was defective in design because no warning was given.

While it doesn't follow necessarily, the applicability of the negligence-related risk-utility test to define design defect may well have led a court like that in *Robinson* to deny *all* liability, whether strict or based on negligence, as to design defects. Its underlying reasoning might then apply to bar strict liability for failure to warn, since this is akin to liability for design defect, but not to preclude liability for negligent failure to warn, since that is a totally separate basis for relief.

**13.** Two that readily come to mind are: (a) a distinction between situations in which the alteration and its danger are foreseeable to the manufacturer and those—like the instant case—where the manufacturer *actually knows* that dangerous alterations are occurring. (This distinction could be made part of possibilities (3) and (4) discussed in the text.); (b) a distinction—to which we have adverted in various parts of this certification but have not highlighted in listing the four possibilities—between liability for failure to warn of a

foreseeable *alteration* of the product, and liability for failure to warn of a foreseeable *misuse* of a product, even of one that has been altered. *See, e.g., Amatulli v. Delhi Constr.*, 77 N.Y.2d 525, 536, 571 N.E.2d 645, 651, 569 N.Y.S.2d 337, 343 (1991) (Titone, *J.*, dissenting in part and concurring in part) ("There ... exists a clear distinction between 'substantial alteration' cases and cases involving unintended uses, or misuses, of a manufacturer's product. Moreover, the distinction is one that should not be blurred or overlooked, since it determines whether an injured plaintiff may or may not recover upon proof of foreseeability.").

**14.** Certification might also be appropriate in circumstances where doubt on the continued validity of an earlier decision of a state's highest court has been cast: (a) by significant questioning of that decision in the opinions of the state's intermediate appellate courts; (b) by abandonment of the rule in neighboring, or otherwise cognate, states; or (c) perhaps even by substantial criticism from respected commentators.

additional questions that may remain on appeal.

\* \* \*

### Certificate

The foregoing is hereby certified to the Court of Appeals of the State of New York, pursuant to § 500.17 of the Rules of the New York Court of Appeals (McKinney's 1997 Rules of Court) and § 0.27 of the Local Rules of the United States Court of Appeals for the Second Circuit, as ordered by the United States Court of Appeals for the Second Circuit.